U.S. Court of Appeals Docket No. 25-6594

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

RUBEN FLORES,
*Plaintiff/Appellant,*

vs.

ASSUREHIRE, INC.,
*Defendant/Appellee.*

---

**APPELLANT'S EXCERPTS OF RECORD**

---

On Appeal From
The United States District Court
For The Central District of California
The Honorable Wesley L. Hsu, Dept. 9B
U.S.D.C. Case No. 2:25-cv-01621-WLH-SK

---

JOSHUA E. KIM - State Bar No. 257260
joshua@devinfoklaw.com
DEVIN H. FOK - State Bar No. 256599
devin@devinfoklaw.com
DHF LAW, P.C.
2304 Huntington Drive, Suite 210
San Marino, CA 91108
Phone: (888) 651-6411
Fax: (818) 484-2023

Attorneys for Plaintiff-Appellant
RUBEN FLORES

## INDEX TO EXCERPTS OF RECORD

| Date Filed | Document | ECF No. | ER Page(s) |
|---|---|---|---|
| 10/10/2025 | Order Dismissing Action with Prejudice (Final Judgment) | ECF 30 | ER-3 |
| 06/02/2025 | Order Granting Defendant's Motion to Dismiss (with Prejudice as to § 1681e(b) and CCRAA claims) | ECF 23 | ER-6 |
| 05/23/2025 | Defendant's Reply ISO Motion to Dismiss | ECF 22 | ER-21 |
| 05/16/2025 | Plaintiff's Memorandum in Opposition to Motion to Dismiss | ECF 21 | ER-37 |
| 05/16/2025 | Plaintiff's Proposed First Amended Complaint (Exhibit 2 to Plaintiff's Opposition to Motion to Dismiss) | ECF 21-3 | ER-69 |
| 04/14/2025 | Defendant's Memorandum ISO Motion to Dismiss | ECF 15-1 | ER-99 |
| 04/14/2025 | Consumer Report (Exhibit A to Defendant's Request for Judicial Notice ISO Motion to Dismiss) | ECF 15-5 | ER-123 |
| 02/26/2025 | Complaint | ECF 1 | ER-131 |
| 10/17/2025 | Notice of Appeal | ECF 33 | ER-157 |
| | Civil Docket for Case No. 2:25-cv-01621-WLH-SK | | ER-158 |

*Note: This index covers all Excerpts of Record, which, together with the index and cover, do not exceed 300 pages per 9th Cir. R. 30-1.4(a).*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-01621-WLH-SK** | Date | October 10, 2025 |
| Title | ***Ruben Flores v. AssureHire, Inc.*** | | |

| | |
|---|---|
| Present: The Honorable | WESLEY L. HSU, United States District Judge |

| Holidae Crawford | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**   **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS [27]**

The Court is in receipt of Defendant AssureHire, Inc. ("Defendant") Motion to Dismiss (the "Motion").  (Mot., Docket No. 27).  No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter.  (*See* Standing Order, Docket No. 9 at 16).  Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.  The hearing calendared for October 17, 2025, is **VACATED** and the matter taken off calendar.  For the reasons explained herein, the Court **GRANTS** the Motion and **DISMISSES** the action with prejudice.

On February 26, 2025, Plaintiff Ruben Flores ("Plaintiff") filed a Complaint against Defendant AssureHire, Inc. ("Defendant") for alleged violations of the Fair Credit Reporting Act (the "FCRA") and its state law equivalent, the California Consumer Reporting Agencies Act (the "CCRAA").  (*See generally* Compl., Docket No. 1).  On April 14, 2025, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedures 12(b)(6).  (Docket No. 15).  On June 2, 2025, the Court granted Defendant's motion to dismiss in its entirety, dismissing the first and second causes of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

action (for violations of Section 1681e(b) of the FCRA and Section 1785.14 of the CCRAA, respectively) with prejudice, while dismissing the third cause of action (for violation of Section 1681k(a) of the FCRA) without prejudice. *Id*. The Court ordered Plaintiff (if he so chose) to file an amended complaint no later than twenty-one (21) days from the filing of the order (June 23, 2025). *Id*. Instead of filing an amended complaint, Plaintiff prematurely filed a notice of appeal to the Ninth Circuit Court of Appeals (Docket No. 24), which was subsequently dismissed for lack of jurisdiction on August 27, 2025. (Docket No. 26). On September 16, 2025, Defendant filed this instant motion, and Plaintiff did not file an opposition to Defendant's motion. (Mot.). To date, Plaintiff has not filed an amended complaint.

Federal Rule of Civil Procedure 41(b) permits a defendant to move for dismissal of the action if "the plaintiff fails to prosecute or comply with" the Federal Rules or court orders. Fed.R.Civ.P. 41(b). "A district court may dismiss an action with prejudice when a plaintiff fails to file an amended complaint within the allotted time period." *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 13048440, at *1 (C.D. Cal. Apr. 15, 2015). "[T]he district court has discretion to dismiss a complaint with prejudice as a sanction for the plaintiff's failure to amend within the time established by the court's order." *Id.* at *1 (C.D. Cal. Apr. 15, 2015) (citing *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 2006 WL 3359222, at *4 (D. Haw. Nov. 16, 2006)). A court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the complaint. *See Bautista v. L.A. Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000).

The Court finds that involuntary dismissal of this action with prejudice under Federal Rule of Civil Procedure 41(b) for failure to prosecute was appropriate because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Plaintiff failed to: (1) file an amended complaint within the allotted time (or at any time up to this point) and (2) file an opposition to Defendant's Motion to Dismiss.[1]

For the reasons stated herein, the Court **GRANTS** Defendant's Motion and **ORDERS** this action dismissed with prejudice.

**IT IS SO ORDERED.**

---

[1] Except for Rule 56 motions, the Central District of California Local Rule 7-9 requires an opposing party to file an opposition to motion at least twenty-one (21) days prior to the date designated for hearing the motion. C.D. Cal. L.R. 7-9; *see also Guevara v. Wells Fargo Bank, N.A.*, 2016 WL 10988572, at *2 (C.D. Cal. June 27, 2016) (finding plaintiffs' failure to oppose the motion to dismiss is in effect a concession that their claims lack merit).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RUBEN FLORES,

          Plaintiff,

v.

ASSUREHIRE, INC.,

          Defendant.

Case No. 2:25-cv-01621-WLH-SK

**ORDER RE DEFENDANT'S MOTION TO DISMISS [15]**

Before the Court is Defendant's Motion to Dismiss (the "Motion"). (Mot. to Dismiss ("Mot."), Docket No. 15). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Docket No. 9 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for June 6, 2025, is **VACATED**, and the matter taken off calendar. For the reasons explained herein, the Court **GRANTS** the Motion, thereby dismissing the action in its entirety. Though the first two causes of action are dismissed with prejudice, the third cause of action is dismissed without prejudice and with leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiff Ruben Flores ("Plaintiff") brings the present action against Defendant AssureHire, Inc. ("Defendant") for alleged violations of the Fair Credit Reporting Act (the "FCRA") and its state law equivalent, the California Consumer Reporting Agencies Act (the "CCRAA"). (*See generally*, Compl., Docket No. 1). Defendant "is a consumer reporting agency [(a "CRA")] that compiles and maintains files on consumers on a nationwide basis." (*Id.* ¶ 2). Defendant "furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers." (*Id.*).

Plaintiff alleges that Defendant (1) failed to follow reasonable procedures to assure maximum possible accuracy in violation of 15 U.S.C. § 1681e(b) ("Section 1681e(b)"); (2) failed to follow reasonable procedures to assure maximum possible accuracy in violation of Cal. Civ. Code § 1785.14 ("Section 1785.14"); and (3) violated 15 U.S.C. § 1681k(a) ("Section 1681k(a)"), either by failing to provide notice of an unfavorable report to Plaintiff at the same time as his potential employer *or* by failing to maintain strict procedures to ensure report completeness. (*See generally id.*). Contending that these violations of the FCRA were negligent and/or willful, Plaintiff seeks actual and statutory damages, reasonable attorneys' fees and costs, in addition to punitive damages. (*Id.*).

Plaintiff alleges that in November 2024, he applied for employment as a field technician with Patriot Environmental Services (the "Potential Employer"). (Compl. ¶ 40). On or about November 25, 2024, Plaintiff received a job offer from the Potential Employer, which was contingent on his passing a background check. (*Id.* ¶¶ 42-43). On December 2, 2024, the Potential Employer then ordered a background check on Plaintiff to be performed by Defendant. (*Id.* ¶ 45). On or about December

5, 2024, Defendant completed its report (the "Report"),[1] "in accordance with its standard procedures," which it then provided to both Plaintiff[2] and the Potential Employer.  (*Id.* ¶ 46; *see also* RJN, Docket No. 15-5, Ex. A ("Report")).  Though Plaintiff does not allege what Defendant's standard procedures are, he contends that "[c]riminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data[,]" which are "created and

---

[1] "Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those same documents that weaken their claims. *Id.*  Unlike judicial notice, a court may assume an incorporated document's contents are true for purposes of a motion to dismiss, with the caveat that it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.  A document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  To qualify as "extensively referenced," the complaint must cite the document at least more than once or quote from it at length; merely mentioning the existence of a document is insufficient. *Id.* at 1002-04. A document forms the basis of a claim when it serves as the foundation for an element of the claim. *See Id.* at 1005.  Here, though the Report is both referenced extensively throughout the Complaint and forms the basis of Plaintiff's claims, it was not attached to the Complaint. (*See* Compl. ¶¶ 43, 46-48, 53-54, 56, 62-64, 70, 75, 84-85, 92, 101-02).  Defendant requested that the Court take judicial notice of the Report – which it attached as Exhibit A to its request (*See* RJN, Docket No. 15-5, Ex. A (the "Report")) – but the Court, instead, deems the Report incorporated by reference.

[2] Though Plaintiff alleged in his Complaint that he did not receive the Report until December 18, 2024, (Compl. ¶ 62), this is directly contradicted by a declaration submitted by Defendant; this evidence is not only not disputed by Plaintiff but is conceded by Plaintiff in his Opposition. (Decl. of Alexander R. Miller in Supp. of Defendant's Mot. ("Miller Decl."), Docket No. 15-2 ¶¶ 4-6); (*see also* Opp'n to Mot., Docket No. 21 at 21) (conceding that despite Plaintiff's "not recall[ing] receiving that email on December 5, 2024," he "acknowledges that the allegation that he never received the report was inaccurate").  Plaintiff admits that "he did, in fact, receive the background report on December 5, 2024 . . ."  (Opp'n to Mot. at 26).  This is despite Defendant's explicit attempts to resolve this factual dispute through meet-and-confer efforts, which Plaintiff inexplicably rebuffed.  (Miller Decl. ¶¶ 4-5).  The purpose of Local Rule 7-3, as well as this Court's Standing Orders strictly enforcing it, is to "attempt to narrow the scope of contested issues."  L.R. 7-3; (*see* Standing Orders, Docket No. 9 § G(1)).  The Court admonishes Plaintiff's counsel to abide by all Local Rules and the Court's Standing Orders in the future, or risk sanctions.

3

**ER-8**

disseminated with little to no manual, in-person review[.]" (*Id.* ¶ 32). On or about December 13, 2024, the Potential Employer informed Plaintiff that "his offer of employment had been rescinded as a direct result of the misdemeanor conviction reported by Defendant." (*Id.* ¶ 61).

Plaintiff contends that the Report "falsely attributed a misdemeanor conviction to Plaintiff[.]" (*Id.* ¶ 5). More specifically, the Report returned a potential match flagged as "consider" for a misdemeanor conviction for driving under the influence ("DUI") belonging to an individual named Ruben Flores in Madera County, California. (*Id.* ¶¶ 6, 48; *see also* Report at 2-3). Plaintiff alleges that "[a] simple review would have confirmed that the misdemeanor DUI conviction did not belong to Plaintiff" but that "Defendant failed to take this basic step . . ." (*Id.* ¶ 6). Though bearing the same name as Plaintiff and similarly residing in California, "the criminal records belonged to an entirely different individual" who Plaintiff alleges is "unmistakably distinguishable from Plaintiff by mug shot, address history, and Social Security number." (*Id.* ¶ 7). Thus, Plaintiff alleges that "proper quality control review" would have revealed "[t]his glaring error[.]" (*Id.* ¶ 38).

On or about January 26, 2025 – over six weeks after receiving the Report – Plaintiff "disputed the inaccurate information with Defendant, via email." (*Id.* ¶ 65). Plaintiff provided identifying information, including "a copy of his driver's license for comparison" and asked Defendant to "correct his consumer report and provide the corrected version to both [the Potential Employer] and himself." (*Id.* ¶ 69-70). The following day, Defendant confirmed that "the documentation had been forwarded to their Dispute Department." (*Id.* ¶ 71). On January 28, 2025, "Defendant provided Plaintiff with an updated report, which no longer included the misdemeanor conviction[.]" (*Id.* ¶ 72). After forwarding the updated report (the "Updated Report"), Plaintiff received a call from the Potential Employer, indicating the intention to issue a new offer letter once a representative from Human Resources returned from vacation. (*Id.* ¶ 73). Thereafter, Plaintiff received a second job offer

4

from the Potential Employer on February 14, 2025, with a start date of March 3, 2025. (*Id.* ¶ 74). Plaintiff's Complaint does not make clear whether he accepted this job.[3]

Plaintiff alleges that the "inaccurate Report cost Plaintiff a good paying job and job security." (*Id.* ¶ 10). Specifically, he alleges that the Report "caused damage to [] Plaintiff by leaving him unemployed for several additional months that he otherwise would have been employed . . ." (*Id.* ¶ 75). Plaintiff further alleges that this Report "shattered his personal relationships[,]" including ending his engagement to his fiancé who "genuinely believe[d] that Plaintiff was the convicted misdemeanant Flores[.]" (*Id.* ¶ 78). In addition to economic damages, Plaintiff alleges "damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from [Plaintiff's] family and friends." (*Id.* ¶ 86).

---

[3] Defense counsel, again, explicitly sought to confirm this fact during the parties' meet-and-confer, but Plaintiff's counsel refused to oblige. (Miller Decl. ¶¶ 4-5). Furthermore, Plaintiff indicated he "would not be willing to amend the Complaint at this stage[,]" but then mystifyingly included a proposed First Amended Complaint ("Proposed FAC") attached to his Opposition. (*See* Proposed FAC, Docket No. 21-2, Ex. 1). In the Proposed FAC – and in his Opposition – Plaintiff directly concedes that he never accepted the position. (*Id.* ¶ 80). After learning this fact for the first time from Plaintiff's briefing (Miller Decl. ¶¶ 4-6; *see also* Reply, Docket No. 22 at 13), Defendant argues in his Reply Brief that "Plaintiff cannot have been damaged by a temporary recission of a job offer that he never intended to take." (Reply at 13). Defendant contends, therefore, that Plaintiff lacks Article III standing for failure to plead any injury. (Reply at 13). The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). While the Court notes this argument is first raised in the reply brief through no fault of Defendant, the Court declines to evaluate this issue at this time. The Court recognizes, however, that the admission of this fact very likely has implications for Plaintiff's Article III standing, which must be addressed in any amended complaint. Once again, the Court admonishes Plaintiff's counsel to adhere by the Local Rules and this Court's Standing Orders, as the failure to do so in the future will result in sanctions. In short, this dilemma was entirely avoidable.

5

**B.   Procedural Background**

Plaintiff filed his Complaint on February 26, 2025.  (*See* Compl.).  On April 14, 2025, Defendant filed the Motion before the Court.  The Motion is fully briefed.

## II.   DISCUSSION

Before the Court is Defendant's Motion.  For the reasons explained herein, the Court **GRANTS** the Motion, thereby dismissing the action in its entirety.  While the first two claims are dismissed with prejudice, the third claim is dismissed without prejudice.

**A.   Legal Standard**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate "only when [the complaint] fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see* Fed. R. Civ. P. 12(b)(6).

"[The] court must 'draw all reasonable inferences in favor of the nonmoving party'" and take its non-conclusory allegations as true.  *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).  The court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . .").

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "'In the absence of any apparent or declared reason – such as undue delay,

6

bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." leave should be granted in conformity with Rule 15(a)(2). *Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (2012) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.   Analysis

#### 1. Plaintiff Fails to State a Claim for Violation of Section 1681e(b)

Section 1681e(b) governs the accuracy of consumer reports. 15 U.S.C. § 1681e(b). It provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* To state a claim under Section 1681e(b), "a consumer must first 'make a *prima facie* showing of inaccurate reporting' by the CRA." *Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Caravalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)) (internal quotation and citation omitted). For purposes of the FCRA, information is inaccurate where it is "either 'patently incorrect' or 'misleading.'" *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009)).

Defendant argues that Plaintiff "fails to allege well-pleaded facts showing that the Report contains any 'inaccurate information[,]'" such that the claim fails. (Mot. at 12) (quoting *Riser v. Cent. Portfolio Control Inc.*, No. 3:21-cv-05238-LK, 2022 WL 2209648, at *3-4 (W.D. Wash. June 21, 2022)). In other words, Defendant contends that Plaintiff has failed to make the threshold showing that the Report was either patently inaccurate or misleading. The Court agrees with Defendant for the reasons explained herein.

#### a.   The Report Is Not Patently Inaccurate

Defendant contends that "Plaintiff does not, and cannot, dispute that the public record information reflected in the Report is in fact accurate." (Mot. at 13). Instead, Plaintiff only alleges that "[t]he criminal conviction reported by Defendant about

7

Plaintiff to [the Potential Employer] does not belong to Plaintiff." (Compl. ¶ 49). Thus, it is not Plaintiff's position that the underlying information reflected in the Report is inaccurate; rather, it is the association of this otherwise accurate information with Plaintiff that is inaccurate.

Plaintiff contends that "'matching facially accurate data to the wrong consumer necessarily creates an inaccuracy'" such that Plaintiff sufficiently made a *prima facie* showing that the Report was patently incorrect. (Opp'n to Mot. at 9-10) (quoting *Kulb v. ChexSystems, Inc.*, No. 24-1390, 2025 WL 1071423, at *2 (E.D.Pa. Apr. 8, 2025)). The Court is not persuaded by this out-of-circuit, non-binding case law, as explained below.[4]

First, that case was in a different posture, as it was at the summary judgment stage, rather than the pleading stage. *Id.* Accordingly, *Kulb* does not bear directly on the pleading standards of Section 1681e(b). Second, *Kulb* is factually distinguishable from the instant matter. The court there had concluded that there existed a "a clear factual dispute" as to whether the report in that case contained inaccuracies. *Id.* This is because there was evidence demonstrating that the defendant had affirmatively reported to Goldman Sachs Bank USA that the plaintiff was deceased, who was not deceased; the issue there was *not* that the defendant CRA had produced a report indicating that someone bearing the plaintiff's name was deceased. *Id*. This is a critical factual distinction. Finally, the court there was not analyzing whether the plaintiff had made the threshold showing of inaccurate reporting, but rather was addressing a separate issue. The court there was considering whether the defendant's

---

[4] In the other case Plaintiff cites to – *Heras v. Nelnet, Inc.*, Case No. CV 16-6388 FMO, 2017 WL 4586334, at *4 (C.D. Cal. Apr. 28, 2017) – the court *granted* the defendant's motion to dismiss for failure to sufficiently allege how the reported items on his credit report "were or are inaccurate." *Id.* at *4. Accordingly, the Court finds this case fails to support Plaintiff's argument. Plaintiff also cited to *Troy v. Equifax Info. Servs., LLC*, No. CV-20-01447-PHX-SPL, 2021 WL 3191232, at *2 – but only for purposes of restating the pleading standard. Merely reiterating the pleading standard fails to lend support to Plaintiff's argument.

8

procedures were "per se reasonable because [they] rel[y] on information from official government records." *Id.* The court concluded that while "it is certainly reasonable to presume the accuracy of official government records, such reliance by a CRA does not by itself guarantee that *its* records are accurate, because matching facially accurate data to the wrong consumer necessarily creates an inaccuracy." *Id.* Thus, the court concluded that summary judgment as to the reasonableness of the defendant CRA's procedures was "not appropriate" and denied the defendant's motion. *Id.* The Court, therefore, finds this case inapposite, in addition to being out-of-circuit and non-binding.

Thus, Plaintiff has not presented – nor is the Court aware of any – case law suggesting that a CRA's producing an otherwise facially accurate report is "patently inaccurate" under Section 1681e(b) by virtue of merely associating that otherwise correct information with an individual who is not the subject of those records. This is particularly so where, as emphasized by Defendant, the Report "never represented that the conviction belonged to Plaintiff." (Mot. at 13). Rather, the "Report indicates only that [Defendant] searched public records using the identifying information provided to it and accurately report[ed] information copied from public records and that, based on the information provided, the employer should 'consider' whether the entry potentially relates to Plaintiff or whether it may be 'inaccurately associated with the consumer who is the subject of the report.'" (*Id*; *see also* Report at 1). The Court agrees and concludes that the Report was not patently inaccurate.

### b. The Report Is Not Misleading

Plaintiff argues that "[e]ven if the criminal record information was facially accurate, [the Report] was misleading because it failed to disclose that the criminal record belonged to a different consumer." (Opp'n to Mot. at 10). The Court disagrees.

"Courts have concluded that a CRA's failure to provide additional information to explain the significance of an otherwise accurate report entry is not the type of

9

misleading omission that is sufficient to fulfill the inaccuracy element of a [Section] 1681e(b) claim." *Braun v. TransUnion LLC*, No. CV 19-06098-CJC, 2019 WL 13083348, at *2 (C.D. Cal. Oct. 10, 2019). Here, Plaintiff's position is that the report was misleading because it did not include additional information to explain that that otherwise accurate record entry did *not* relate to Plaintiff.[5] Accordingly, the Court rejects this argument.[6]

In sum, the Court finds that Plaintiff has failed to make the threshold showing that the Report was either patently inaccurate or misleading.[7] Accordingly, the Court **GRANTS** the Motion to dismiss with respect to the first cause of action. Finding amendment would be "futile," this dismissal is with prejudice. *Hall*, 697 F.3d at 1073 (quoting *Foman*, 371 U.S. at 182).

### 2. Plaintiff's CCRAA Claim Fails with FCRA Claim

"[T]he CCRAA is "'substantially based on the [FCRA][.]" *Caravalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal.App.4th 1, 12 (2003)).

---

[5] Once again, Plaintiff cited to an inapposite case. *See Sanchez v. Experian Info. Solutions, Inc.*, 2017 WL 11634982 (C.D. Cal. May 8, 2017). First, that case is at the summary judgment phase and, therefore, does not bear directly upon the pleading standard of Section 1681e(b). *Id.* at *1. Furthermore, the case is factually distinguishable where, in that case, there was evidence that the defendant "maintained an inaccurate Social Security number on file connected to [the] [p]laintiff's account[.]" *Id.* at *4. The Court reiterates that, in the instant matter, there is no contention that the underlying information within the Report was inaccurate – only that it was information not attributable to Plaintiff.

[6] Furthermore, with respect to the allegedly misleading nature of the Report, Defendant highlights that "Plaintiff makes irreconcilable claims that his fiancée and family believed the report was about him (Compl. ¶ 78) when '[a] cursory review of the widely available public court records confirms that the criminal records belongs to a distinct and unrelated male[.]'" (Reply at 8) (quoting Compl. ¶ 51). The Court agrees with Defendant. It is challenging to conclude *both* that the information within the Report so obviously did not apply to Plaintiff that Defendant should have noticed *and* was simultaneously so convincingly applicable to Plaintiff that it misled his fiancé and entire family. Both things seemingly cannot be true.

[7] The Court, therefore, declines to reach the remainder of Defendant's arguments about whether any purported inaccuracy within the Report was due to Defendant's failure to follow reasonable procedures, having found Plaintiff failed to make a *prima facie* showing that the Report was inaccurate within the meaning of the FCRA.

10

**ER-15**

Section 1785.14 is "substantially identical" to Section 1681e(b) under the FCRA. *Galea v. Wells Fargo Bank, N.A.*, 388 F.Supp.3d 1212, 1217 (E.D. Cal. Aug. 1, 2019). Thus, courts apply the same "'patently incorrect or materially misleading' standard[]" applied in FCRA cases. *Id.* (quoting *Gorman*, 584 F.3d at 1160); *see also Galea*, 388 F.Supp.3d at 1217 (applying the "patently incorrect or materially misleading" standard to a Section 1785.14 claim).

Defendant argues that "Plaintiff's claim under Section 1785.14 is predicated on the exact same facts and legal theories as his FCRA claims[,]" such that the Section 1785.14 claim "fails for the same reasons Plaintiff's FCRA claims fail[.]" Plaintiff concedes that the Section 1785.14 claim is "substantially identical to" the Section 1681e(b) claim, arguing only that his "state law claims are well-pled" "[f]or the same reasons describe [*sic*] above," ostensibly referring to arguments made with respect to the Section 1681e(b) claim. (Opp'n to Mot. at 26). Given that the Court has already rejected all of these arguments, the Court agrees with Defendant.

Accordingly, the Court **GRANTS** the Motion with respect to the second cause of action for a violation of Section 1785.14 of the CCRAA. Finding amendment would similarly be "futile," this dismissal is with prejudice. *Hall*, 697 F.3d at 1073 (quoting *Foman*, 371 U.S. at 182).

### 3. Plaintiff Fails to State a Claim for Violation of Section 1681k(a)

Section 1681k(a) governs the furnishing of consumer reports for employment purposes, in situations where matters of public record are compiled and reported that "are likely to have an adverse effect upon a consumer's ability to obtain employment[.]" 15 U.S.C. § 1681k(a). Section 1681k(a) contains two prongs, at least one of which must be satisfied. It provides that whenever a CRA, such as Defendant, provides such a report, it must *either* (1) "at the same time" it provides it to a prospective employer "notify the consumer of the fact that public record information is being reported . . . together with the name and address of the person to whom such information is being reported;" *or* (2) "maintain strict procedures designed to insure

11

that whenever public record information . . . is reported it is complete and up to date." *Id.* § 1681k(a)(1)-(2) (emphasis added).

Defendant argues, therefore, that to successfully state a claim, a Plaintiff "must allege sufficient, well-pleaded facts showing that [Defendant] did neither[,]" which is not the case here. (Mot. at 16); *see, e.g., Hawkins v. S2Verify LLC*, No. C 15-03502 WHA, 2016 WL 107197, at *2 (N.D. Cal. Jan. 11, 2016) ("Section 1681k(a) has two prongs, and a credit reporting agency can satisfy it by doing one of the two things, either (1) notifying the consumer that potentially adverse information is being reported about him at the time it is being reported, or (2) maintaining strict procedures to ensure the information being reported is complete and up to date"). The Court agrees with Defendant.

Plaintiff's Complaint alleges that Defendant's "fail[ure] to notify Plaintiff of the adverse public records information it had provided to [the Potential Employer]" when it was provided to the Potential Employer amounts to a violation of Section 1681k(a). (Compl. ¶¶ 99-106, 62). Plaintiff in his Opposition, however, concedes that he did, in fact, receive the Report on December 5, 2024, at the same time it was provided to the Potential Employer. (Opp'n to Mot. at 21, 27). Given Defendant's mandate under Section 1681k(a) to provide *either* this simultaneous notice under subsection one *or* maintain strict procedures ensuring completeness of information under subsection two, the Court concludes such mandate was fulfilled. *See* 15 U.S.C. § 1681k(a)(1)-(2). The Court, therefore, **GRANTS** the Motion with respect to the Section 1681k(a) claim.

The only question left with respect to this claim is whether its dismissal is with or without prejudice. Defendant urges the Court to dismiss the claim with prejudice, as any amendment would be "futile[.]" (Reply at 10). For the reasons explained herein, the Court dismisses this claim without prejudice and grants leave to amend.

"Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend." *Broam v.*

12

ER-17

*Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).  Having conceded receipt of the Report on December 5, 2024, Plaintiff newly contends in his Opposition that the failure to include the physical address of the employer within the Report is what amounts to a violation of Section 1681k(a).[8]  (Opp'n to Mot. at 21-22).  The Court agrees that, technically, the failure to include the Potential Employer's address would mean Section 1681k(a)(1) is not satisfied.[9]

Though the Court need not reach the question of whether Defendant maintained strict procedures ensuring completeness of information within the meaning of Section 1681k(a)(2) at this time – having found Section 1681k(a)(1) satisfied by the current iteration of the Complaint – the Court briefly addresses this issue in the interest of efficiency, should Plaintiff choose to amend.  As stated, a Plaintiff must demonstrate that a Defendant has complied with *neither* prong to state a claim under Section 1681k(a).  *Hawkins*, 2016 WL 107197, at *2 (emphasizing that a plaintiff must allege a defendant has failed to comply with both prongs to state a claim under Section 1681k(a)).

---

[8] Plaintiff requests that the Court take judicial notice of the fact that no address for the Potential Employer is included on the Report.  (Opp'n to Mot. at 28).  Plaintiff has done so without filing it "as a separately docketed attachment to the main docket entry with a description of the attachment[.]"  (Standing Orders at 5).  The Court, therefore, "decline[s] to consider" this request as it was not "filed in accordance" with the Court's Standing Orders.  (*Id.*).  Furthermore, Plaintiff's request for "a summary judgment finding at this stage that the [Section] 1681k(a) notice was deficient as a matter of law" is unsupported by any case law and inappropriate at this stage.  (*Id.*).

[9] The United States Supreme Court has recognized that "bare procedural violations, divorced from any concrete harm" will "not suffice for Article III standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021); *see also Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ([T]he plausible pleading of a flat-out violation of a statutory provision will not necessarily support a civil law suit in federal court[,]" as bare, procedural violations "will not constitute injury-in-fact as demanded by Article III").  Defendant argues that "Plaintiff cannot have Article III standing to bring a claim on this basis."  (Reply at 1).  Plaintiff does not explain how the failure to include the Potential Employer's address caused injury, indicating only that ". . .the absence of the employer's address . . . need not independently produce harm . . ."  (Opp'n to Mot. at 23).  Thus, while the Court harbors doubt that this claim would survive an Article III challenge on this basis, it nevertheless dismisses this cause of action without prejudice.

13

Defendant argues that, not only has Plaintiff "fail[ed] to allege any facts as to what [Defendant's] procedures were," but, more importantly, Plaintiff has improperly "conflate[d] 'completeness' and 'accuracy.'" (Reply at 12). The Court agrees; Plaintiff's allegations go to the accuracy of the information, rather than the completeness of it. The court in *Doe v. Sterling Infosystems, Inc.* analyzed the meaning of "completeness" in this context – emphasizing it is a concept entirely distinct from accuracy. No. 15-04770 RGK, 2015 WL 13917196, at *5 (C.D. Cal. Dec. 21, 2015). There, the Court noted that "[Section] 1681k(a)(2) requires 'complete' and 'up-to-date' information, [and] it says nothing of accuracy[.]" *Id.* (quoting Section 1681k(a)(2)). The court highlighted that "just because a report contains gratuitous and factually false information, thereby making it 'inaccurate,' does not mean it is missing pertinent information to render it 'incomplete.'" *Id.* In other words, completeness requires that there is no missing information, whereas accuracy requires that there is no false information. *Id.* The Court finds that in the instant matter there are no allegations that material facts were missing, such that Plaintiff's claim also fails under Section 1681k(a)(2). In the event Plaintiff can meaningfully cure this deficiency, the dismissal of this claim is without prejudice.[10]

---

[10] Given the Court's conclusion that Plaintiff has failed to state a claim for either alleged violation of the FCRA, it need not reach the question of whether these alleged violations were willful or negligent. Significantly, however, the FCRA only provides "for compensation in the form of actual damages and attorneys' fees if a [CRA] negligently fails to comply with any provision of [the] FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332 (9th Cir. 1995); *see also* 15 U.S.C. § 1681o. Accordingly, a plaintiff alleging negligent violation must allege actual damages. *Abbink v. Experian Info. Solutions, Inc.*, 2019 WL 6838705, at *5 (C.D. Cal. Sept. 20, 2019). A demonstration of "willful noncompliance[]" also allows a plaintiff to recover punitive damages. *Guimond*, 45 F.3d at 1332.; *see also* 15 U.S.C. § 1681n. The Court expresses significant doubt that Plaintiff can demonstrate actual damages, given the admission that he ultimately declined the job.

14

**III.   CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**, such that the action is dismissed in its entirety.  The first and second causes of action – for violations of Section 1681e(b) of the FCRA and Section 1785.14 of the CCRAA, respectively – are dismissed with prejudice.  The third cause of action – for violation of Section 1681k(a) of the FCRA – is dismissed without prejudice.  Should Plaintiff choose to file an amended complaint, the Court **ORDERS** him to do so within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated:  June 2, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

15

**ER-20**

ELIZABETH A. SPERLING - State Bar No. 231474
esperling@glaserweil.com
ALEXANDER R. MILLER - State Bar No. 294474
amiller@glaserweil.com
**GLASER WEIL FINK HOWARD**
  **JORDAN & SHAPIRO LLP**
600 W. Broadway, Suite 2850
San Diego, CA 92101
Telephone:  (619) 765-4380
Facsimile:   (619) 483-0646

Attorneys for Defendant
AssureHire, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN FLORES,<br><br>                              Plaintiff,<br><br>v.<br><br>ASSUREHIRE, INC.,<br><br>                              Defendant. | Case No.: 2:25-cv-01621-WLH-SK<br><br>Assigned to Hon. Wesley L. Hsu<br><br>**REPLY IN SUPPORT OF DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Hearing Date:   June 6, 2025<br>Hearing Time:  1:30 p.m.<br>Courtroom:       9B<br><br>Complaint filed:   February 26, 2025<br>Trial Date:          Not set |

REPLY  IN SUPPORT OF ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

**ER-21**

3070353

# **TABLE OF CONTENTS**

Page

A.    Plaintiff Concedes His Complaint Is Deficient By Proposing A New
Amended Complaint....................................................................................7

B.    The Complaint Fails To State A Claim Under 15 U.S.C. § 1681e(b) ...........7

   1.    Plaintiff Fails To Show The Report Is Inaccurate ...............................7

   2.    Plaintiff Fails To Plausibly Allege That AssureHire Failed To
Follow Reasonable Procedures ..........................................................9

C.    The Complaint Fails To State A Claim Under 15 U.S.C. § 1681k(a) ..........10

   1.    AssureHire Provided The Report To Plaintiff And The Employer
At The Same Time .............................................................................10

   2.    Plaintiff Fails To Show AssureHire Did Not Maintain Strict
Procedures To Insure Its Report Was Complete...............................12

D.    Plaintiff Fails To Show Actual Damages......................................................12

E.    Plaintiff Fails To Show AssureHire Acted Willfully or Negligently ...........14

F.    Plaintiff Fails To State A Claim Under Cal. Civ. Code § 1785.14...............15

G.    Conclusion....................................................................................................15

Glaser Weil

REPLY IN SUPPORT OF ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3070353

## **TABLE OF AUTHORITIES**

Page

## **CASES**

*Abbink v. Experian Info. Sols., Inc.*,
2019 WL 6838705 (C.D. Cal. Sept. 20, 2019).................................................14

*Casillas v. Madison Avenue Assocs., Inc.*,
926 F.3d 329 (7th Cir. 2019)..........................................................................15

*Doe v. Sterling Infosystems, Inc.*,
No. CV1504770RGKAJWX, 2015 WL 13917196
(C.D. Cal. Dec. 21, 2015)................................................................................12

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018).........................................................................11

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)...........................................................................9

*Hawkins v. S2Verify LLC*,
No. C 15-03502 WHA, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016)...........11

*Heras v. Nelnet, Inc.*,
No. CV166388FMOPLAX, 2017 WL 4586334
(C.D. Cal. Apr. 28, 2017)..................................................................................8

*Kulb v. ChexSystems, Inc.*,
No. CV 24-1390, 2025 WL 1071423
(E.D. Pa. Apr. 8, 2025).....................................................................................7

*Leo v. AppFolio, Inc.*,
No. 17-5771 RJB, 2018 WL 623647
(W.D. Wash. Jan. 30, 2018) ..............................................................................9

*Lopez v. Nat'l Credit Reporting, Inc.*,
No. C12-05166 HRL, 2013 WL 1999624
(N.D. Cal. May 13, 2013)..................................................................................9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................................15

*Mnatsakanyan v. Goldsmith & Hull APC*,
2013 WL 10155707 (C.D. Cal. May 14, 2013) ..............................................14

*Robles v. AMPAM Parks Mech., Inc.*,
No. EDCV 14-02362-VAP, 2015 WL 1952311
(C.D. Cal. Apr. 28, 2015)................................................................................14

*Somaysoy v. Ow*,
536 F. Supp. 3d 634 (C.D. Cal. 2021)...............................................................8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................10

*GlaserWeil*

REPLY IN SUPPORT OF ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT
**ER-23**

3070353

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)................................................................8

*Syed v. M-I LLC*,
No. CIV. 1:14-742 WBS, 2014 WL 4344746
(E.D. Cal. Aug. 28, 2014)....................................................................14

*Taylor v. First Advantage Background Servs. Corp*,
207 F. Supp. 3d 1095 (N.D. Cal. 2016) ...............................................9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).........................................11, 15

*White v. Experian Information Sols., Inc.*,
No. 2:23-CV-05591-DSF-PVC, 2024 WL 4846759
(C.D. Cal. Mar. 25, 2024)....................................................................9

**OTHER AUTHORITIES**

15 U.S.C. § 1681e(b) ........................................................................................9

15 U.S.C. § 1681i ..............................................................................................9

15 U.S.C. § 1681k(a) .......................................................................................10

15 U.S.C. § 1681k(a)(2) ....................................................................................5

15 U.S.C. § 1681n(a) .......................................................................................14

15 U.S.C. § 1681o(a) .......................................................................................14

15 U.S.C. § 1681o(a)(1) ...................................................................................12

Glaser Weil

REPLY IN SUPPORT OF ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3070353

Plaintiff helps to establish the merits of AssureHire's Motion by not only asking for leave to amend but providing a proposed amended complaint with his opposition. *See* Dkt. 21-2, 21-3. To be clear, AssureHire's counsel met and conferred extensively with Plaintiff's New York counsel on the issues briefed in its Motion prior to filing the Motion, in compliance with the Court's local rules and scheduling order. AssureHire repeatedly asked if Plaintiff would either amend the Complaint or provide further information to try and resolve these issues without expensive motion practice. *See* Miller Decl. ¶¶ 3-6. Plaintiff's counsel refused. *Id.* ¶ 6. Instead, even after AssureHire educated Plaintiff's New York-based counsel on the local practice in this District and this Court's standing order[1] regarding meet and confer requirements for motions to dismiss, Plaintiff's counsel stated that he would not "litigate the whole case by phone," and would not amend the Complaint at this stage regardless of AssureHire's arguments. *Id.* ¶ 6. Plaintiff's counsel refused to meet and confer further and stated the parties could argue their positions further in briefing to the Court. *Id.*

Now, after AssureHire was forced to undertake the significant expense of conducting extensive meet and confer communications and drafting this Motion to Dismiss, Plaintiff ***admits*** that his claim under 15 U.S.C. section 1681k(a)(2) was ***false***, and now abandons this theory of liability—just as AssureHire demonstrated and requested he do during the meet and confer process. *See* Opp. 21 ("Plaintiff acknowledges that the allegation that he never received the report was inaccurate."); Miller Decl. ¶ 5, Ex. 1. In addition, Plaintiff's counsel now finally confirms for the first time that Plaintiff chose ***not*** to accept the position with Employer when it was re-offered—another question AssureHire's counsel repeatedly asked while meeting and conferring but Plaintiff's counsel refused to answer. *See* Dkt. 21-3 ¶ 80.

---

[1] In his Opposition, Plaintiff ignores the Court's standing order regarding citations to authority, including the Court's preferences regarding the use of footnotes, use of Westlaw whenever possible, and citation to materials not accessible on Westlaw. *See* Standing Order § 6(a). Plaintiff also heavily relies on out of circuit authorities.

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

Plaintiff's Complaint is defective and must be dismissed. At its core, the allegations in Plaintiff's Complaint are simply implausible. If it were "obvious" that the Report did not relate to Plaintiff based on even "[a] cursory review of the widely available public court records" and based on "[a] mug shot relating to the misdemeanor DUI conviction" which "readily demonstrates that Plaintiff is not the same individual" as well as the crime being committed in a different county (Compl. ¶¶ 51-53), then why would Plaintiff's fiancée and family believe the report was true, causing Plaintiff's fiancée to leave him and his family to shun him? Tellingly, Plaintiff provides no details as to when, or even how, his family ever obtained the report. Nor does Plaintiff make any attempt to explain his *six-week* delay in bringing the issue to AssureHire's attention, after which AssureHire immediately issued a corrected report in only two days. If this were such an obvious failure that the report identified the wrong Ruben Flores, which cost Plaintiff a job, surely he would have provided the necessary information immediately both to the Employer and to AssureHire to demonstrate that they had the wrong guy. The fact that AssureHire immediately issued a corrected report within just two days of receiving the correct information negates any FCRA violation.

Moreover, all of Plaintiff's claims fail as a matter of law for failure to satisfy Article III standing. Plaintiff has not, and cannot, demonstrate that AssureHire committed any violation of FCRA or any other law that caused Plaintiff a concrete injury for Article III purposes.

The Court should not grant Plaintiff's request for leave to amend to file the proffered amended complaint because to do so would be futile. The proposed amended complaint still fails to plead sufficient facts establishing the core elements of his claims. The facts that are pled are completely implausible. The proposed amended complaint demonstrates that Plaintiff is unable to state any plausible claim for relief against AssureHire and that amendment would be futile. Accordingly, Plaintiff's action should be dismissed with prejudice and without leave to amend.

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

ER-26

3070353

**A.      Plaintiff Concedes His Complaint Is Deficient By Proposing A New Amended Complaint**

AssureHire's counsel extensively met and conferred with Plaintiff's New York counsel on the myriad deficiencies in the Complaint, at significant expense, prior to bringing the instant Motion to Dismiss.  Plaintiff's counsel refused to address any of the issues raised or to make any amendment to the Complaint even after being educated on the procedures and local rules of this District as well as the Court's standing order. *See* Miller Decl. ¶¶ 3-6. Plaintiff's counsel does not dispute this in the Opposition. Nevertheless, in a complete about-face, Plaintiff's counsel concedes the issues raised by proffering a proposed amended complaint that attempts to address some of the issues identified by AssureHire's counsel during meet and confer efforts and in the Motion. This includes confirming for the first time that "***Plaintiff ultimately chose not to accept the job offer***" with Employer (Dkt. 21-3 ¶ 80), a critical fact that Plaintiff's counsel refused to confirm during meet and confer efforts, and which establishes that Plaintiff suffered no actual damages. *See infra* § E.

As Plaintiff's counsel did not meet and confer in good faith per the Court's Standing Order and the Local Rules of this Court, the Court should deem the Motion unopposed and grant the Motion on that basis. *See* Standing Order § G(1)(d).

**B.      The Complaint Fails To State A Claim Under 15 U.S.C. § 1681e(b)**

**1.      Plaintiff Fails To Show The Report Is Inaccurate**

Plaintiff concedes that "[a] threshold showing that the reporting is "inaccurate" is necessary to succeed on a §1681e(b) claim." Opp. 9. Plaintiff relies on the out-of-circuit district court decision in *Kulb v. ChexSystems, Inc.*, No. CV 24-1390, 2025 WL 1071423, at *2 (E.D. Pa. Apr. 8, 2025) to argue that "matching facially accurate data to the wrong consumer necessarily creates an inaccuracy." Opp. at 9-10. But even if this decision were binding law, let alone from this Circuit—it is not—as set forth in AssureHire's Motion, AssureHire never represented that the conviction belonged to

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

**ER-27**

3070353

Plaintiff.[2] The Report does not contain any false or inaccurate statements. The Report indicates only that AssureHire searched public records using the identifying information provided to it by the Employer and it accurately reports information copied from public records. *See* RJN Ex. A. The Report goes on to indicate that, based on the information provided, the Employer should "consider" whether the entry potentially relates to Plaintiff. *See id.* AssureHire never made any false statement about Plaintiff.

Plaintiff's conclusory assertion that "virtually every person that encountered the report," including Plaintiff's fiancée and family "was misled into believing that Plaintiff has a recent DUI conviction" (Opp. at 10) is completely implausible and wholly unsupported by the Complaint.[3] Plaintiff does not allege that his fiancée or family ever saw the report. And even if they did, Plaintiff makes no attempt to explain the completely implausible conclusions that he asks this Court to draw. Plaintiff makes irreconcilable claims that his fiancée and family believed the Report was about him (Compl. ¶ 78) when "[a] cursory review of the widely available public court records confirms that the criminal record belongs to a distinct and unrelated male" (*id.* ¶ 51) and there are "obvious discrepancies between Convicted Misdemeanant Flores and Plaintiff" (*id.* ¶ 52) including the "mug shot" (*id.* ¶ 53(a)), county of residence (*id.* ¶ 53(b)), and social security number. *Id.* ¶ 53(c). It is simply not plausible that the Report was so obviously wrong but nevertheless "ruptured" Plaintiff's relationships with his entire family and his fiancée to such an extent that she left him over it.

___

[2] It is unclear why Plaintiff cites *Heras v. Nelnet, Inc.*, No. CV166388FMOPLAX, 2017 WL 4586334 (C.D. Cal. Apr. 28, 2017) (Opp. at 10). In *Heras*, Judge Olguin **granted** motions to dismiss without leave to amend "because [plaintiff] does not sufficiently allege how the reported items on his credit report were or are inaccurate." *See id.* at *4.

[3] "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Somaysoy v. Ow*, 536 F. Supp. 3d 634, 636 (C.D. Cal. 2021), quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

The information in the Report is all accurately reported from public records, and therefore cannot be the basis for a false reporting claim. *See* Mot. § IV(A). It is quite revealing that Plaintiff fails to address the extensive Ninth Circuit authority cited in AssureHire's Motion demonstrating that dismissal is appropriate here. Instead, Plaintiff relies primarily on out-of-circuit cases outside the motion to dismiss context and outside the FCRA context that do not pertain to section 1681e(b) claims.[4] Opp. at 11.

### 2. Plaintiff Fails To Plausibly Allege That AssureHire Failed To Follow Reasonable Procedures

Plaintiff is incorrect in claiming that "reasonable procedures" are an affirmative defense. Opp. at 13-15. Courts in this District have held that, whether a defendant failed to follow reasonable procedures to assure maximum possible accuracy is an element of Plaintiff's Section 1681e(b) claim that must be adequately pleaded in the Complaint. *See, e.g.*, *Alvarez v. Galpin Motors, Inc.*, No. 222CV01598ODWMRWX, 2022 WL 1477421, at *2 (C.D. Cal. May 10, 2022); *White v. Experian Information Sols., Inc.*, No. 2:23-CV-05591-DSF-PVC, 2024 WL 4846759, at *3 (C.D. Cal. Mar. 25, 2024) (dismissing Section 1681e(b) claim because "[plaintiff] has asserted no allegations that either [defendant] prepared any report that included an inaccuracy or that [defendant's] procedures were 'unreasonable.'").

Plaintiff's reliance on *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016) and *Leo v. AppFolio, Inc.*, No. 17-5771 RJB, 2018 WL 623647 (W.D. Wash. Jan. 30, 2018) are unavailing. *Leo* involved a motion to strike or dismiss class action allegations. And *Taylor* only held that "reasonable procedures" is an affirmative defense in the context of a 15 U.S.C. section 1681i claim for failure to

---

[4] To the extent Plaintiff relies on *Lopez v. Nat'l Credit Reporting, Inc.,* No. C12-05166 HRL, 2013 WL 1999624, at *3 (N.D. Cal. May 13, 2013), this unpublished decision is unpersuasive because the court provided no explanation for its holding, merely stating that "[i]nasmuch as NCRI contends that Lopez fails to state a claim because the report is technically accurate, that contention is rejected" and citing dicta from *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1163 (9th Cir. 2009) which involved inaccuracies under 15 U.S.C. § 1681s-2(b).

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

conduct a reasonable reinvestigation—for which failure to follow reasonable procedures was not an element of Plaintiff's claim. *See Taylor*, 207 F. Supp. 3d at 1106. This is not the case here.

Accordingly, Plaintiff fails to adequately allege that AssureHire failed to follow reasonable procedures and his Section 1681e(b) claim should be dismissed.

### C.     The Complaint Fails To State A Claim Under 15 U.S.C. § 1681k(a)

#### 1.     AssureHire Provided The Report To Plaintiff And The Employer At The Same Time

Plaintiff belatedly concedes the crucial fact that he received a copy of the Report at the same time Employer did.  Plaintiff does not oppose AssureHire's Motion to Dismiss on this basis. *See* Opp. at 21-22 ("Plaintiff acknowledges that the allegation that he never received the report was inaccurate."). AssureHire's counsel raised this issue repeatedly during the meet and confer process but Plaintiff's counsel refused to amend to address the issue. *See* Miller Decl. ¶ 5.

Now conceding that Plaintiff's Section 1681k(a) claim fails as pleaded, Plaintiff attempts to shift course and argues a new purported violation not alleged in the operative Complaint as the basis for his Section 1681k(a) claim. Plaintiff claims that the Report violated Section 1681k(a) solely because it did not include Employer's address. Opp. 21. This allegation is not pled in the Complaint. *See* Compl. ¶ 99; Dkt. 21-3 ¶ 108.

Even if it were pled, it would be futile because **Plaintiff admits he was not harmed by the purported failure to list Employer's address**. Opp. 23 ("Plaintiff does not seek recompense for Defendant's failure to provide the required notice under § 1681k(a)(1)."). Thus, Plaintiff cannot have Article III standing to bring a claim on this basis. This was a prospective employer after all, and surely Plaintiff knows its address. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation. . . . [N]ot all inaccuracies cause harm or present any material risk of harm."); *Dutta v. State Farm*

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

*Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("[T]he plausible pleading of a flat out violation of a statutory provision will not necessarily support a civil law suit in federal court.").

Nor is it conceivable how Plaintiff could ever allege an injury by such a technical violation. The United States Supreme Court has held that, "bare procedural violations, divorced from any concrete harm" do "not suffice for Article III standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440, 141 S. Ct. 2190, 2213 (2021) (citing *Spokeo*, 578 U.S. at 341). Thus, even if Plaintiff alleged any violations of FCRA on the part of AssureHire, they are mere technical, procedural violations that are not tied to any actual, concrete, particularized harm or injury. An "asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion LLC*, 594 U.S. at 442.

To the extent Plaintiff contends that the alleged failure to include Employer's address on the Report somehow amounts to a violation for failure "to maintain and implement strict procedures to ensure the accuracy and completeness of the information it reported" (Opp. 22-23), Plaintiff's reasoning is nonsensical and circular. Plaintiff already alleges a claim for purported inaccurate reporting under Section 1681e(b). To defeat Plaintiff's Section 1681k(a) claim, AssureHire need only meet one of the prongs under Section 1681k(a), which Plaintiff concedes AssureHire did. *See, e.g.*, *Hawkins v. S2Verify LLC*, No. C 15-03502 WHA, 2016 WL 107197, at *2 (N.D. Cal. Jan. 11, 2016) ("Section 1681k(a) has two prongs, and a credit reporting agency can satisfy it by doing one of two things, either (1) notifying the consumer that potentially adverse information is being reported about him at the time it is being reported, or (2) maintaining strict procedures to ensure the information being reported is complete and up to date.").

The Supreme Court put it best: "No concrete harm, no standing." *TransUnion LLC*, 594 U.S. at 442. Plaintiff lacks standing to assert his claims. This action should be dismissed with prejudice.

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

**2.**    **Plaintiff Fails To Show AssureHire Did Not Maintain Strict Procedures To Insure Its Report Was Complete**

Plaintiff concedes the Report was provided to Plaintiff and Employer at the same time, so the Court need not even reach this prong of Plaintiff's 1681k(a)(2) claim. Even if the Court were to consider this prong, Plaintiff's Section 1681k(a) claim still fails because Plaintiff fails to allege well-pleaded facts showing that AssureHire failed to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a)(2).

*First*, Plaintiff concedes that he fails to allege any facts as to what AssureHire's procedures were, let alone how they were deficient under the FCRA. Moreover, he fails to adequately allege AssureHire failed to adopt reasonable procedures. *See supra* § B.

*Second*, AssureHire cited caselaw from this District dismissing cases where, like here, Plaintiff conflates "completeness" and "accuracy." *See Doe v. Sterling Infosystems, Inc.*, No. CV1504770RGKAJWX, 2015 WL 13917196, at *5 (C.D. Cal. Dec. 21, 2015) ("While § 1681k(a)(2) requires 'complete' and 'up-to-date' information, it says nothing of accuracy; rather, the requirement that information be 'accurate' is found in an entirely different provision, § 1681e(b)."). Tellingly, Plaintiff fails to address this case and instead proposes his own novel reinterpretation of the statute unsupported by any case law. Opp. 25-26. Plaintiff's proposed statutory construction fails because "***the requirement that information be 'accurate' is found in an entirely different provision, § 1681e(b)***," under which Plaintiff already brings a claim. *Sterling Infosystems, Inc.*, 2015 WL 13917196, at *5. Plaintiff's strained attempts to recast his Section 1681k(a) claim as a duplicate of his Section 1681e(b) claim should be rejected.

**D.    Plaintiff Fails To Show Actual Damages**

Plaintiff's Opposition confirms that his claims for negligent violations of FCRA fail because he has no actual damages. *See* Opp. 16-17; 15 U.S.C. § 1681o(a)(1) (only "actual damages" may be recovered for a negligent violation of the FCRA). As such,

12

3070353

he lacks Article III standing because he has no injury. Here, Plaintiff confirms for the first time in his proposed amended complaint that even after being re-offered the job by Employer, ***Plaintiff chose not to take the job***. Plaintiff cannot have been damaged by the temporary rescission of a job offer that he never intended to take.

To the extent Plaintiff now summarily claims that "as a recovering alcoholic, the personal stigma of Defendant's reporting had a ripple effect on Plaintiff's personal life," and that "[h]is fiancé believed that he had relapsed," and "Plaintiff [*sic*] own family members were frustrated that he could not longer [*sic*] control his purported alcoholism and could not hold back from expressing their disappointment and disgust when Plaintiff had to turn to them for financial assistance" (Opp. 16), ***none of these allegations are found in the Complaint***. He cannot rely on allegations from a proposed amended complaint to defeat AssureHire's Motion to Dismiss the operative Complaint.

Even if Plaintiff had made these allegations in the operative Complaint, they are still insufficient to plausibly state a claim because Plaintiff fails to allege any facts that plausibly link AssureHire's false or inaccurate or negligent reporting (none of which is demonstrated) to the alleged nuclear fallout that he describes, complete with his family shunning him, his fiancée leaving him, falling into a debilitating depression, and financial ruin. Opp. at 7-8. No causal connection is demonstrated here. Plaintiff never alleges that his family members reviewed the Report, when they reviewed it, when the fallout occurred, and why his family members supposedly believed a report that Plaintiff says was so obviously incorrect on its face that even a cursory review would reveal the Report does not refer to him. *See, e.g.*, Compl. ¶¶ 49-55. Nor does Plaintiff offer any explanation for ***why he waited at least six weeks until January 26, 2025 to dispute the Report***, which AssureHire promptly corrected within two days.

Plaintiff's nonsensical argument that, had he diligently reported the dispute, which he admits he did not, he would have still incurred a 31-day delay before starting work (Opp. 17) is wholly unsupported by the Complaint. Plaintiff alleges that the start date on his second job offer was only delayed because the Human Resources manager

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

3070353

happened to be out of office on vacation. See Compl. ¶ 73-74. Had Plaintiff diligently and promptly reported the discrepancy on or shortly after December 5, 2024 when he concedes he received the Report, the issue could have been corrected in two days, before his initial December 11, 2024 start date.

In sum, Plaintiff's allegations are entirely implausible and fail to demonstrate concrete, particularized harm sufficient for Article III standing. Because Plaintiff fails to plausibly allege that he was damaged by AssureHire at all, he lacks standing and his claims for negligent violation of the FCRA should be dismissed.

### E.      Plaintiff Fails To Show AssureHire Acted Willfully or Negligently

Plaintiff's FCRA claims also fail because Plaintiff fails to allege well-pleaded facts showing that AssureHire acted willfully or negligently. *See* 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681o(a). Plaintiff fails to address any of the substantial authority AssureHire cited from this District confirming that, in order to state a FCRA claim, "the plaintiff's complaint must allege specific facts as to the defendant's mental state . . . . Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Abbink v. Experian Info. Sols., Inc.*, No. SACV191257JFWPJWX, 2019 WL 6838705, at \*5 (C.D. Cal. Sept. 20, 2019); *see also Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM PLAX, 2013 WL 10155707, at \*7 (C.D. Cal. May 14, 2013) (same); *Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 4344746, at \*3 (E.D. Cal. Aug. 28, 2014) (same); *Robles v. AMPAM Parks Mech., Inc.*, No. EDCV 14-02362-VAP, 2015 WL 1952311, at \*5 (C.D. Cal. Apr. 28, 2015)) (same).

Nor does Plaintiff's Complaint state anywhere that AssureHire was "on notice of the potential inaccuracy" such that willfulness can be inferred. Opp. 18. To the contrary, the Complaint makes clear that as soon as Plaintiff finally raised the issue with AssureHire, AssureHire promptly issued a corrected Report only two days later. Compl. ¶¶6 5-72. AssureHire also included extensive disclosures compliant with both state law and the FCRA advising Plaintiff of his rights. *See* RJN Ex. A. Accordingly, Plaintiff's FCRA claims must be dismissed.

---

14

3070353

**F.      Plaintiff Fails To State A Claim Under Cal. Civ. Code § 1785.14**

Plaintiff concedes that his state law claims are predicated on his FCRA claims. *See* Opp. at 26. Accordingly, they fail for the same reasons.

**G.      Conclusion**

For the reasons set forth above, AssureHire respectfully requests that Plaintiff's Complaint be dismissed in its entirety, with prejudice. None of the proposed amendments in the proffered amended complaint would cure these material deficiencies. Plaintiff has no Article III standing. Because leave to amend would be futile, it should be denied.  Once again, in the words of the United States Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021), "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992)) 'If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" (citing *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

DATED:  May 23, 2025

Respectfully submitted,

GLASER WEIL FINK HOWARD
   JORDAN & SHAPIRO LLP


By: */s/ Elizabeth A. Sperling*
      Elizabeth A. Sperling
      Alexander R. Miller
      Attorneys for Defendant
      AssureHire Inc.

15

3070353

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for AssureHire Inc., certifies that this brief contains 3,788 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order section G(4).

DATED:  May 23, 2025

Respectfully submitted,

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By:  */s/ Elizabeth A. Sperling*
    Elizabeth A. Sperling
    Alexander R. Miller
    Attorneys for Defendant
    AssureHire Inc.

16

ASSUREHIRE, INC.'S REPLY ISO MOTION TO DISMISS COMPLAINT

**ER-36**

3070353

Meir Rubinov, NY Bar # 6077887
*Admitted Pro Hac Vice*
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| RUBEN FLORES,<br><br>                    Plaintiff,<br><br>vs.<br><br>ASSUREHIRE, INC.,<br><br>                    Defendant. | Case No.: 2:25-cv-01621-WLH-SK<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: June 6, 2025<br>Hearing Time: 1:30 p.m.<br>Courtroom: 9B<br><br>Complaint filed: February 26, 2025<br>Trial Date: Not set |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

1

**Cases**

*Adan v. Insight Investigation, Inc.*, No. 16cv2807-GPC(WVG), 2018 U.S. Dist. LEXIS 8365, *22-*23 (S.D. Cal. Jan. 18, 2018) ...................................................23

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).....29

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). .........................................9

*Doe v. Sterling Infosystems, Inc.*, No. CV15-04770-RGK (AJWx), 2015 WL 13917196 (C.D. Cal. Dec. 21, 2015), .....................................................................25

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ......................................................8

*Gorman v. Wolposs & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); ..........9

*Graham v. Sunnova Energy Int'l, Inc.*, No. 1:22-cv-0622 JLT BAM, 2024 U.S. Dist. LEXIS 34415 (E.D. Cal. Feb. 28, 2024)...................................................................19

*Guimond*, 45 F.3d at 1332-33; and *Drew v. Equifax*, 690 F.3d 1100, 1109 (9th Cir. 2012)...............................................................................................................17

*Hartwig v. Byrider Fin., LLC*, No. 23-cv-8-wmc, 2025 U.S. Dist. LEXIS 15991 (W.D. Wis. Jan. 28, 2025) ...........................................................................22

*Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336 (E.D.V.A. 2016)............................................................................................11

*Henderson v. Experian Info. Sols., Inc.*, No. 2:24-cv-10686-MCS-AJR, 2025 U.S. Dist. LEXIS 54292 (C.D. Cal. Mar. 21, 2025) .......................................................14

*Heras v. Nelnet, Inc.*, 2017 U.S. Dist. LEXIS 65211 (C.D. Cal. Apr. 28, 2017) .....10

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ......................................................................25

*Joseph v. Tenant Tracker, Inc.*, 2023 U.S. Dist. LEXIS 51940, at *21-22 (W.D. Wash. Feb. 3, 2023)................................................................................11

*Koller v. Monsanto Co.*, 2025 U.S. Dist. LEXIS 7334, at *2 (9th Cir. Mar. 27, 2025) ............................................................................................................8

*Kulb v. ChexSystems, Inc.*, 2025 U.S. Dist. LEXIS 67413, at *5 (E.D.P.A. Apr. 8, 2025)...............................................................................................10

*Lara v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 118150, *8 (S.D. Cal. June 24, 2021) ..............................................................................................18

*Leo v. AppFolio, Inc.*, 2018 U.S. Dist. LEXIS 14931 (W.D. Wash. Jan. 30, 2018) .14

*Leslie v. Experian Info. Sols., Inc.*, No. 21-00334 JMS-RT, 2023 U.S. Dist. LEXIS 136434 (D. Haw. Aug. 4, 2023) ................................................................17

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009)...18

*Lopez v. Nat'l Credit Reporting, Inc.*, 2013 U.S. Dist. LEXIS 67889 (N.D. Cal. May 13, 2013) ................................................................................................11

*Philpot v. Kos Media LLC*, No. 18-cv-04100-TSH, 2018 U.S. Dist. LEXIS 234047 (N.D. Cal. Dec. 6, 2018) ................................................................................15

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

*Razaghi v. Razaghi Dev. Co., LLC*, 2021 U.S. Dist. LEXIS 188237 (D. Nev. Sep. 30, 2021) .................................................................................................................29

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009) ..............16

*Rodriguez v. Equifax Info. Servs., LLC*, 2023 U.S. Dist. LEXIS 44891, at *4 n.4 (S.D. Cal. Mar. 15, 2023) .....................................................................................15

*Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at *21 (C.D. Cal. May 8, 2017) ...........................................................................................................10

*Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 148 (4th Cir. 2008). ................................................................................................................................9

*Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 794, 756 (9th Cir. 2018). ......................9

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) .....................................................................................................................22

*Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 4344746, at *3 (E.D. Cal. Aug. 28, 2014) ......................................................................................................19

*Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016) ..............................................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ....................9

*Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889 (11th Cir. 2015) .....................................................................................................19

*Troy v. Equifax Info. Servs., LLC*, 2021 U.S. Dist. LEXIS 140996 (D. Ariz. July 28, 2021)......................................................................................................................10

*United States v. Lopez*, 998 F.3d 431, 441 (9th Cir. 2021) ......................................26

*White v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 113042, *8 (C.D. Cal. May 16, 2024) ........................................................................................................26

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015).............................25

**Statutes**

§ 1681k(a)(2) .............................................................................................................20

§1681e(b) ..................................................................................................................10

15 U.S.C § 1681k(a)(1) & (2)....................................................................................21

15 U.S.C. §§1681n(a), ..............................................................................................18

15 U.S.C. §1681k........................................................................................................20

Cal. Civ. Code § 1785.14...........................................................................................26

Fed. R. Civ. P. 12(b)(6) ...............................................................................................8

3

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................5
II.   STATEMENT OF FACTS ........................................................................6
III.  LEGAL STANDARDS ............................................................................8
IV.   ARGUMENT ..........................................................................................9
   A.   The Complaint Plausibly Alleges that Defendant Reported Inaccurate
   Information ...............................................................................................9
      1.   The AssureHire report was patently inaccurate. ...........................9
      2.   The AssureHire report was materially misleading. ....................10
      3.   A boilerplate disclaimer does not magically cure an inaccuracy and
      insulate Defendant from §1681e(b) liability. .....................................10
   B.   Plaintiff is Not Required to Anticipate and Plead Around Defendant's
   Affirmative Defense that it Maintained Reasonable Procedures .........................13
   C.   The Complaint Plausibly Alleges That Plaintiff was Damaged ...................16
   D.   The Complaint Adequately Alleges that AssureHire Acted Willfully .........18
   E.   Plaintiff's §1681k(a) Claim Is Well-Pled And Should Be Sustained ...........20
      1.   Plaintiff alleges that he did not receive a §1681k(a)(1) notice ...............21
      2.   Plaintiff has standing to assert his § 1681k claim....................22
      3.   AssureHire does not maintain strict procedures to ensure consumer reports
      are complete and up-to-date ................................................................23
   F.   Plaintiff's State-Law Claims Are Well-Pled................................................26
   G.   If Needed, Plaintiff Requests Leave to File an Amended Complaint...........26
   H.   Judicial Notice As To Defendant's Deficient § 1681k(a)(1) Notice as a
   Matter of Law ....................................................................................28
V.  CONCLUSION .......................................................................................29

Plaintiff Ruben Flores ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant AssureHire, Inc.'s ("AssureHire" or "Defendant") motion to dismiss.[1]

## I.   PRELIMINARY STATEMENT

This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). Defendant, a regulated consumer reporting agency ("CRA"), sold an employment screening report to Plaintiff's prospective employer, Patriot Environmental Services ("Patriot"), containing a misdemeanor DUI conviction that did not belong to Plaintiff. Rather, it belonged to a different individual with a similar name (the "non-consumer"). Unsurprisingly, upon reviewing the report, Patriot rescinded its pending job offer to Plaintiff.

The inaccurate reporting damaged Plaintiff financially and wreaked havoc on his personal life. His family and fiancé believed that he had relapsed into alcoholism, and those relationships ruptured. His engagement was soon called off; his family unsympathetic. He remained unemployed for 81 days.

This should not have happened. As a regulated CRA, AssureHire was required to maintain reasonable procedures to ensure the "maximum possible accuracy" of

---

[1] As used herein, the terms "Complaint," "¶__" and "¶¶__" refer to the complaint filed in this action on February 26, 2025, ECF No. 1. "Mem." refers to AssureHire's Memorandum of Points and Authorities in support of its Rule 12(b)(6) motion, ECF No. 15-1. "Miller Dec." refers to the Declaration of Alexander R. Miller dated April 14, 2025 with exhibits thereto, ECF No. 15-2. Unless otherwise noted, all emphasis is added and citations are omitted.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-41**

information in Plaintiff's consumer report. At the very least, it should have cross-referenced Plaintiff's personal identifying information with that of the non-consumer.

Based on these allegations, the complaint alleges that AssureHire violated §1681e(b) and its state law analogue by failing to maintain reasonable procedures to properly match criminal records to consumers. The complaint also alleges that AssureHire violated §1681k by failing to notify him that it reported adverse information on his consumer report.

Defendant now moves to dismiss, arguing that Plaintiff wasn't damaged (he was); that the reporting wasn't inaccurate (it was); that Plaintiff did not plead enough facts to prove willfullness (he did); and that he failed to describe the procedural failures that led to the inaccurate reporting (he didn't have to, but still did). Defendant's motion should be denied.

## II.    STATEMENT OF FACTS

This FCRA claim arises out of an employment screening report sold by Defendant to Patriot in connection with Plaintiff's employment application. Specifically, AssureHire reported that Plaintiff's criminal record included a recent misdemeanor conviction from Madera County for driving under the influence. ¶48. The report stated that Plaintiff was sentenced to five days' imprisonment, three years of probation, and a substantial monetary penalty. *Id*. But that criminal record did not belong to Plaintiff. ¶49. Rather, it belonged to a completely different individual with

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-42**

a similar name.  ¶51.  Unlike the non-consumer, Plaintiff has never been convicted of any DUI.  ¶50.

Plaintiff was initially scheduled to start working for Patriot on December 11, 2024.  ¶42. On December 5, 2024, the report was delivered to Patriot, who reviewed it and notified Plaintiff that the job offer was rescinded. ¶¶46, 61.

On January 26, 2025, Plaintiff submitted a written dispute to AssureHire, explaining that the DUI conviction did not belong to him and demanding that the report be correct.  ¶¶65-70.  On January 28, 2025, AssureHire issued an updated report. ¶¶71-73.  On February 14, 2025, Patriot extended a new job offer to Plaintiff with a "tentative" start date of March 3, 2025. ¶74.

This entire ordeal was financially ruinous and personally devastating to Plaintiff. As a direct result of AssureHire's reporting, Plaintiff remained unemployed for 83 days, from December 11, 2024 until March 3, 2025.  ¶¶42, 75-77.  Moreover, as a recovering alcoholic, the personal stigma of Defendant's reporting had a ripple effect on Plaintiff's personal life.  His fiancé believed that he had relapsed, and their once-budding relationship became permeated with feelings of distrust, betrayal, and outright conflict; the engagement was soon terminated.  ¶78. Plaintiff own family members were frustrated that he could no longer control his purported alcoholism and could not hold back from expressing their disappointment and disgust when Plaintiff had to turn to them for financial assistance. ¶78. The emotional turmoil

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-43**

Plaintiff endured manifested physically in the form of nausea, loss of appetite, elevated blood pressure, and debilitating depression. ¶¶11, 80.

This should not have happened. To the contrary, the complaint alleges that it could have been easily prevented if AssureHire maintained reasonable procedures for matching criminal records to consumers. As a matter of policy, however, AssureHire will report criminal records based solely on a partial name and date of birth match, without considering any other publicly available information. For instance, AssureHire does not review the public court records to confirm that the convicted criminal and the consumer are the same person. It does not cross reference the respective address histories of the consumer and the convict. It matches criminal records without comparing and matching the consumer's drivers' license with official mug shots. And it does not utilize the consumer's social security number as a screening mechanism to prevent improper matches. *See* ¶¶6-9, 35-6, 38, 46, 51-56, 64.

## III. LEGAL STANDARDS

Defendant's motion is assessed using the familiar plausibility standards of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016). Thus, plaintiff's factual allegations are presumed to be true, and he is entitled to the benefit of every favorable inference that can be drawn from her allegations. *See Koller v. Monsanto Co.*, 2025 U.S. Dist. LEXIS 7334, at *2 (9th Cir. Mar. 27, 2025); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  The question is whether a claim is "***plausible***" and, therefore, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## IV.   ARGUMENT

### A. The Complaint Plausibly Alleges that Defendant Reported Inaccurate Information

A threshold showing that the reporting is "inaccurate" is necessary to succeed on a §1681e(b) claim.  *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 794, 756 (9th Cir. 2018).  In the Ninth Circuit, a report is "incomplete or inaccurate" when it is "patently incorrect" or "when it is misleading in such a way and to such an extent that it can be expected to [have an] adverse effect." *Gorman v. Wolposs & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *accord Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 148 (4th Cir. 2008).  Under either standard, a jury could find that AssureHire's reporting was inaccurate.

### 1.     *The AssureHire report was patently inaccurate.*

The complaint alleges, and AssureHire readily concedes, that AssureHire sold a consumer report about Plaintiff that included a DUI conviction belonging to a completely different person. *Cf.* Mem. at 7:5-7 ("it turns out that Plaintiff was not the same 'Ruben Flores' listed in the relevant criminal records.").  Because "matching

9

facially accurate data to the wrong consumer necessarily creates an inaccuracy," the complaint plausibly alleges that AssureHire reported inaccurate information. *Kulb v. ChexSystems, Inc.*, 2025 U.S. Dist. LEXIS 67413, at *5 (E.D.P.A. Apr. 8, 2025). No more is required at the pleading stage. *See Heras v. Nelnet, Inc.*, 2017 U.S. Dist. LEXIS 65211 (C.D. Cal. Apr. 28, 2017); *Troy v. Equifax Info. Servs., LLC*, 2021 U.S. Dist. LEXIS 140996 (D. Ariz. July 28, 2021) ("a plaintiff need only allege that her credit report contained an inaccuracy to make her *prima facie* case - and survive a motion to dismiss - under §1681e(b)").

### 2.    *The AssureHire report was materially misleading.*

Even if the criminal record information was facially accurate, the AssureHire report was misleading because it failed to disclose that the criminal record belonged to a different consumer. As alleged, virtually every person that encountered the report was misled into believing that Plaintiff has a recent DUI conviction. Patriot rescinded his job offer. His fiancé left him. His family shamed him. These well-pled, strong reactions to the report create an inference that the report was materially misleading to a reasonable consumer. *See Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at *21 (C.D. Cal. May 8, 2017); *Sanchez v. Experian Info. Sols.*, 2017 U.S. Dist. LEXIS 235474, at *21 (C.D. Cal. May 8, 2017).

### 3.    *A boilerplate disclaimer does not magically cure an inaccuracy and insulate Defendant from §1681e(b) liability.*

Defendant concedes that the DUI conviction belongs to a different person. *Cf.*

Mem. at 7:5-7. It nevertheless argues that the report itself effectively conveyed that criminal records might not belong to the subject of the report (*i.e.*, Plaintiff) for three reasons: (i) the report included a disclaimer stating that the information may be inaccurately associated with the subject of the report; (ii) the criminal record search was adjudicated "consider"; and (iii) the report indicates that the record was confirmed by "NAME/DOB." *Cf.* Mem. at 1,13. Defendant is wrong.

First, courts have overwhelming rejected the argument that a boilerplate disclaimer insulates a CRA from §1681e(b) liability. *See, e.g.*, *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336 (E.D.V.A. 2016) (defendant could not avoid liability by pointing to disclaimer or other contractual delegation of responsibility). *Joseph v. Tenant Tracker, Inc.*, 2023 U.S. Dist. LEXIS 51940, at *21-22 (W.D. Wash. Feb. 3, 2023) (collecting cases).[2]

In *Lopez v. Nat'l Credit Reporting, Inc.*, 2013 U.S. Dist. LEXIS 67889 (N.D. Cal. May 13, 2013), for example, a consumer was denied housing after defendant sold a tenant screening report containing an eviction record that belonged to a

---

[2] *Cf. Smith v. Lexisnexis Screening Sols. Inc.*, 138 F. Supp. 3d 872, 898 (E.D. Mich. 2015) ("Defendant has provided no legal authority suggesting that a CRA can disclaim liability for errors on a report"), *aff'd in relevant part, rev'd in part on other grounds*, 837 F.3d 604 (6th Cir. 2016); *Cortez v. Trans Union*, L.L.C., 617 F.3d 688, 708 (3d Cir. 2010) (expressing doubt that disclaimer in subscriber agreement could alter coverage under FCRA); *Ramirez v. Trans Union, L.L.C.*, 2017 WL 1133611, at *4 (N.D. Cal. Mar. 27, 2017) (rejecting argument that CRA's disclaimer absolved it of liability), *aff'd on other grounds*, 951 F.3d 1008 (9th Cir.), *rev'd in part on other grounds*, __ U.S. __, 141 S. Ct. 2190, (2021); *Philpot v. Microbilt Corp.*, 2018 WL 834619, at *6 (W.D. Ky. Feb. 12, 2018) (denying summary judgment on question of accuracy even though report included disclaimer); *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1349 (N.D. Ga. 2015) (disclaimer that did not relieve CRA of liability).

different consumer. *Id.* at *8. The consumer filed suit under §1681e(b). A disclaimer on the report clearly warned that "there is no guarantee that the name(s) listed below are the same individual(s) that are applying for housing." *Id.* at *8. The defendant moved to dismiss, arguing that "plaintiff cannot demonstrate an inaccurate in her credit report because it accurately reports the existence of court records, with no representation that those court filings belong to plaintiff." *Id.* The court rejected that argument and denied the motion.

Second, by indicating that the DUI was "Confirmed by NAME/DOB," the report conveyed that the DUI did, in fact belong to Plaintiff. On a motion to dismiss, AssureHire is not entitled to the dubious yet favorable inference that end users would interpret that notation as a warning that the DUI actually belonged to a different person.

Finally, Defendant's emphasis on the scoring associated with the Madera County Criminal Seach (that stated "consider") is a red herring. *Cf.* Mem at 10, 13. As explained in a 2019 NCLC Report, many CRAs offer automated decisioning or adjudication products that score applicants and provide a recommendation about whether or not to accept them. In the employment context, questions arose as to whether an auto-adjudication to reject an applicant client qualified as an adverse action that necessitates prior written notice to the consumer. To avoid these issues, the industry has shifted away from recommending outright rejections or failures. Eligibility issues are now flagged using more neutral terms (such as "consider"). The

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

outcome, however, is the same. The candidate is rejected. *See* NCLC Report, *Broken Records Redux* at 13-15 (2019) *available at* https://www.nclc.org/wp-content/uploads/2022/09/report-broken-records-redux.pdf. Thus, the report was inaccurate, despite AssureHire's use of the term "consider" on the report.

### B. Plaintiff is Not Required to Anticipate and Plead Around Defendant's Affirmative Defense that it Maintained Reasonable Procedures

Throughout its brief, AssureHire argues that the §1681e(b) claim must be dismissed because the complaint fails to allege that the inaccuracy was caused by AssureHire's failure to follow reasonable procedures. *Cf.* Mem. at 14-15. AssureHire is wrong, both the facts and the law.

The complaint describes with precision how the inaccuracy was caused by AssureHire's failure to maintain reasonable for matching criminal records to consumers. Indeed, it alleges that AssureHire will report criminal records based solely on a partial name and date of birth match, without considering any other publicly available information. For instance, AssureHire does not review the public court records to confirm that the convicted criminal and the consumer are the same person. *Cf.* Mem. at 9. It does not cross reference the respective address histories of

the consumer and the convict.[3]  It matches criminal records without comparing and matching the consumer's drivers' license with official mug shots.  And it does not utilize the consumer's social security number as a screening mechanism to prevent improper matches.  *See* ¶¶6-9, 35-6, 38, 46, 51-56, 64.  "While these allegations may not include the level of detail [AssureHire] desires, they are sufficient to state a plausible claim under 15 U.S.C. § 1681e(b) . . . [AssureHire] can seek further detail on Plaintiff's theory of the claim in discovery." *Henderson v. Experian Info. Sols., Inc.*, 2025 U.S. Dist. LEXIS 54292 (C.D. Cal. Mar. 21, 2025).

Regardless, Plaintiff is not required to anticipate and negate AssureHire's "reasonable procedures" affirmative defense at the pleading stage.  *See generally Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016); *Leo v. AppFolio, Inc.*, 2018 U.S. Dist. LEXIS 14931 (W.D. Wash. Jan. 30, 2018) (explaining that "reasonable procedures" is an affirmative defense because it allows a CRA to escape §1681e(b) liability if it establishes that an inaccurate report was generated despite the fact that it followed unreasonable procedures); *accord*

---

[3] AssureHire contends that it did was not provided with Plaintiff's address so it cannot be faulted for failing to cross referencing the address. This argument is disingenuous. he consumer report attached to AssureHire's motion confirm that AssureHire did have Plaintiff's social security number, address, date of birth, email and cell phone number.  In addition, it confirms that AssureHire conducted a "SSN Address Trace" on December 2, 2024, which presumably would have shown that Plaintiff was never associated with the address belonging to the non-consumer.  Moreover, this concession establishes willfulness and establishes that, as a matter of policy, AssureHire will run searches that are all but guaranteed to yield expansive and mismatched results.

*Philpot v. Kos Media LLC*, 2018 U.S. Dist. LEXIS 234047 (N.D. Cal. Dec. 6, 2018) ("a plaintiff is not obligated to plead the absence of affirmative defenses.").

In other words, the reasonableness of procedures is simply not relevant to a Rule 12(b)(6) motion. *See Rodriguez v. Equifax Info. Servs., LLC*, 2023 U.S. Dist. LEXIS 44891, at *4 n.4 (S.D. Cal. Mar. 15, 2023). Rather, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.* (citing *Guimmond*, 45 F.3d at 1333).

This rule makes sense. Ordinary consumers do not have access to the internal operating procedures of CRAs. Even in litigation, those procedures and policies are zealously guarded, withheld in discovery, and designated as confidential once produced. If consumers were expected to plead the details of a CRA's internal procedures before discovery, every §1681e(b) claim would be dismissed at the pleading stage, and the FCRA would be effectively neutered. AssureHire's attempt to hold Plaintiff to a heightened pleading standard should be rejected.[4]

---

[4] Incidentally, AssureHire admits that it runs searches and compiles consumer reports based solely on the information provided by employer, whom it faults for providing limited information. *Cf.* Mem. at 7-8. Discovery is needed to determine whether this procedure is reasonable, and whether other safeguards have been implemented to prevent improper matches for common names, such as "Flores." *See* NCLC Report, Digital Denials: How Abuse, Bias, and Lack of Transparency in Tenant Screening Harm Renters at 36-37 (explaining that the prevalence of reports containing mismatched criminal records is "disproportionately high in Latino, Asian and Black populations . . . because these communities tend to have fewer unique surnames") (2023), *available at* https://www.nclc.org/wp-content/uploads/2023/09/202309_Report_Digital-Denials.pdf.

## C. The Complaint Plausibly Alleges That Plaintiff was Damaged

The complaint alleged that as a direct result of AssureHire's reporting, Patriot rescinded the job offer and Plaintiff remained unemployed for 83 days, from December 11, 2024 until March 3, 2025.   ¶¶42, 75-77.   Taken as true, these allegations establish that Plaintiff suffered economic damages as a result of the inaccurate report. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009).

But the complaint goes further than that, and explains with specificity that as a recovering alcoholic, the personal stigma of Defendant's reporting had a ripple effect on Plaintiff's personal life.  His fiancé believed that he had relapsed, and their once-budding relationship became permeated with feelings of distrust, betrayal, and outright conflict; the engagement was soon terminated.  ¶78. Plaintiff own family members were frustrated that he could not longer control his purported alcoholism and could not hold back from expressing their disappointment and disgust when Plaintiff had to turn to them for financial assistance. ¶78. The emotional turmoil Plaintiff endured manifested physically in the form of nausea, loss of appetite, elevated blood pressure, and debilitating depression.  ¶¶11, 80.

Defendant nevertheless argues that Plaintiff was not damaged because the report was *eventually* fixed and his job offer was *eventually* reinstated. Defendant is wrong. The reinstatement of Plaintiff's job offer may have capped off damages, it did not magically undo the damage that was done. Plaintiff still experienced a period of

economic and noneconomic turmoil when his job offer was rescinded. In other words, Defendant cannot credibly argue that no harm has ever taken place. *See Leslie v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 136434 (D. Haw. Aug. 4, 2023) (citing *Guimond*, 45 F.3d at 1332-33; *Drew v. Equifax*, 690 F.3d 1100, 1109 (9th Cir. 2012)).

Moreover, AssureHire insists that Plaintiff "could have cleared up the discrepancy very quickly and avoided all of the problems" caused by the inaccurate consumer report. To prove this point, AssureHire points to the fact that Plaintiff disputed the inaccurate reporting on January 26, 2025, and received a new job offer on February 14, 2025, with a proposed start date of March 3, 2025. *Cf.* Mem. at 9:12-21. In other words, AssureHire is apparently arguing a diligent dispute would have caused a delay of no more than 36 days.[5] This argument is bizarre and lacks merit because Plaintiff would have lost time from work and wages due to the initial misreporting regardless. What's more, there is absolutely no requirement to dispute under §1681e(b). Thus, whether or not Plaintiff disputed is immaterial to §1681e(b) liability.

---

[5] Plaintiff was originally scheduled to start working on December 11, 2024. Patriot rescinded the offer on December 5, 2024, the same day AssureHire published the inaccurate consumer report. If Plaintiff had submitted a dispute the next day, he would be able to start working 36 days later on January 11, 2025, a mere 31 day delay.

**D. The Complaint Adequately Alleges that AssureHire Acted Willfully**

The FCRA does not make CRAs strictly liable for all inaccuracies, but instead creates a private right of action for negligent or willful violations of the FCRA. *See* 15 U.S.C. §§1681n(a), 1681o(a).  To plead a willful violation under the FCRA, a complaint must allege that the defendant knowingly or recklessly violated the law. Recklessness means that the CRA "ran a risk of violating the law substantially greater than the risk associated with a reading [of the FCRA] that was merely careless." *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

Critically, courts in this District have concluded that "general allegations are sufficient to maintain a claim for willful violations of the FCRA." *Ben-Avi v. Experian Info. Sols., Inc.*, 2023 U.S. Dist. LEXIS 145809 (S.D. Cal. Aug. 18, 2023) (citing *Barrios v. Equifax Info. Services, LLC*, 2019 U.S. Dist. LEXIS 227242, at *5-6 (C.D. Cal. Oct. 28, 2019)).  This principle is a corollary of Fed. R. Civ. P. 8, and the general rules that allegations pertaining to state of mind need not be pled with specificity. *Cf.* Fed. R. Civ. P. 9 (no duty to plead scienter with particularity).

Moreover, willfulness can be inferred where a CRA was on notice of the potential inaccuracy. *See Lara v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 118150, *8 (S.D. Cal. June 24, 2021). Accordingly, allegations that a defendant had knowledge of the FCRA's requirements prior to any violation "can be read to allege willfulness in terms of either knowledge or recklessness." *Graham v. Sunnova Energy Int'l, Inc.*, No. 1:22-cv-0622 JLT BAM, 2024 U.S. Dist. LEXIS 34415 (E.D. Cal.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

Feb. 28, 2024) (citing *Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889 (11th Cir. 2015)). Additionally, plaintiff's allegations that defendant's conduct was objectively unreasonable suffice to properly allege a willful and reckless FCRA violation. *See Syed v. M-I LLC*, 2014 WL 4344746, at *3 (E.D. Cal. Aug. 28, 2014).

As applied here, the complaint alleges that Defendant compiled a consumer report using nothing more than the consumer's name and date of birth. Defendant, a sophisticated background check company in the business of disseminating public record information, willfully favored automation and cost-efficiency over reasonable quality control procedures to ensure accuracy and compliance. By opting for a system that forgoes individualized review and quality control and favoring automation, Defendant adopted a business model practically designed to ignore known risks of harm—conduct squarely within the ambit of recklessness. That choice is not neutral—it is a business model built around risk evasion, not risk mitigation. Tellingly, the very disclaimer Defendant inserts at the top of its report—stating that information may be "inaccurately associated" with the subject—condemns it by revealing its awareness that such errors are not only foreseeable, but likely, as Plaintiff alleges. Rather than implement safeguards to prevent these foreseeable harms (like the ones Plaintiff delineated ¶¶ 51-53), Defendant opted for a- boilerplate disclaimer that attempts to shift the burden of due diligence to the employer and the consumer. That practice is emblematic of reckless disregard of its statutory duties.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

This disclaimer was put in by Defendant clearly because it was aware of the attendant risks of harm from their credit reporting, exactly as Plaintiff alleged. However, despite ensuring quality control of the contents it reports, it simply slaps a disclaimer unto its report warning of inaccuracy, and essentially conveying to the users that they need to be on notice of these potential inaccuracies that can result from their reporting, instead of actually instituting reasonable procedures to ensure accuracy as Defendant is required.

To press this point further, Plaintiff alleged that Defendant is a member of the Professional Background Screening Association (PBSA), an industry group that conducts frequent trainings and conferences on FCRA compliance. ¶39. It is reasonable to infer that Defendant was or should have been aware of its legal duties and the serious consequences of noncompliance. And yet, Defendant didn't bother to implement any policies or procedures to filter out criminal records that did not belong to the target of the report. At the pleading stage, these allegations plausibly establish that Defendant acted willfully under both §1681e(b) and § 1681k(a)(2).

**E. Plaintiff's §1681k(a) Claim Is Well-Pled And Should Be Sustained**

15 U.S.C. §1681k requires CRAs to comply with certain procedures when furnishing "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." CRAs must "notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the

name and address of the person to whom such information is being reported;" or to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C § 1681k(a)(1) & (2).

### 1. *Plaintiff alleges that he did not receive a §1681k(a)(1) notice*

In his complaint, Plaintiff truthfully alleged—based on the knowledge available to him at the time—that he did not receive notice that Defendant had furnished a consumer report to his prospective employer, which included a grossly stigmatizing and inaccurate misdemeanor DUI conviction. During the parties' meet and confer, Defendant's counsel represented that the same report was emailed to Plaintiff on the date it was sent to the employer. Plaintiff does not recall receiving that email on December 5, 2024, nor reviewing it thereafter. To that extent, Plaintiff acknowledges that the allegation that he never received the report was inaccurate. However, this does not resolve Defendant's noncompliance with § 1681k(a)(1), which requires not only that notice be given, but that it include both the name ***and address*** of the employer receiving the report. Defendant failed to provide the employer's address.

While this omission may appear minor, the statute is explicit—leaving no ambiguity and no room for deviation. Section 1681k(a)(1) is written in clear, mandatory terms—it requires the CRA to provide not just notice, but the *name and address* of the employer receiving the report. Where the statute is this unambiguous

and the obligation this rudimentary, failure to comply should not inure to Defendant's benefit. It should inure to the benefit of the consumer the statute was enacted to protect. Defendant's failure to meet even this most basic requirement therefore necessarily triggers the statutory alternative: a mandatory obligation to maintain—and ultimately prove—strict procedures to ensure the accuracy of the information it reported under § 1681k(a)(2).[6]

### 2. Plaintiff has standing to assert his § 1681k claim.

Finally, Defendant's standing argument under § 1681k is legally misguided. To establish standing, a plaintiff must show: (1) an injury in fact; (2) traceability to the defendant's conduct; and (3) redressability. *Hartwig v. Byrider Fin., LLC*, No. 23-cv-8-wmc, 2025 U.S. Dist. LEXIS 15991 (W.D. Wis. Jan. 28, 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). The relevant question is whether the injury must stem from each statutory element or from the violation as a whole. The Supreme Court directly answered this in *TransUnion LLC v. Ramirez*, holding that standing turns on whether a plaintiff suffered concrete harm from the *violation itself*, not from each component of it. 594 U.S. 413, 429 (2021) (emphasis added). The Court reaffirmed that "plaintiffs must demonstrate standing for each claim that they press," not for each discrete statutory

---

[6] Should the Court determine that Plaintiff's §1681k claim is deficient, Plaintiff respectfully requests leave to file an amended complaint to allege Defendant's failure to provide the employer's address remains a violation of § 1681k(a)(1) and triggers the statutory requirement to demonstrate strict procedures under § 1681k(a)(2).

element. *Id.* at 432. Thus, the absence of the employer's address—while one element of § 1681k(a)(1)—need not independently produce harm if the overall statutory violation did.

Here, Plaintiff does not seek recompense for Defendant's failure to provide the required notice under § 1681k(a)(1). Rather, that failure serves as the statutory trigger—an essential element—imposing on Defendant the obligation under § 1681k(a)(2) to maintain and implement strict procedures to ensure the accuracy and completeness of the information it reported. *See Adan v. Insight Investigation, Inc.*, 2018 U.S. Dist. LEXIS 8365, *22-*23 (S.D. Cal. Jan. 18, 2018), *see also* 15 U.S.C. § 1681k(a)(2). Plaintiff alleges that Defendant failed to maintain even reasonable procedures under § 1681e(b); it follows necessarily that Defendant could not have satisfied the heightened standard required by § 1681k(a)(2). Thus, the same injury-in-fact that supports standing under § 1681e(b) and the CCCRAA—namely, the loss of employment, collapse of Plaintiff's engagement, and resulting financial, emotional, and physical harm—necessarily establishes standing for the violation of § 1681k(a)(2).

### 3. AssureHire does not maintain strict procedures to ensure consumer reports are complete and up-to-date

Just as Plaintiff more than adequately alleged Defendant's violation of § 1681e(b) by alleging the clear inaccuracy of having a distinctive individual's criminal record history presented to his prospective employer as his own, it follows that

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-59**

Plaintiff alleged that Defendant failed to follow strict procedures since this is a more rigorous and heightened standard. *See supra a* § IV(A)(1)-(2).

Additionally, and more concerning is Defendant's construction of § 1681k(a)(2) and Opposing Counsel's representation of Plaintiff's claims relating thereto. Defendant at no point defines the term "complete" to facilitate a productive discourse as such Plaintiff will do so. A record is deemed "complete" if it allows a "user to either link the record to the consumer who was the subject of the search query or exclude that consumer as the source of the record. Conversely, then, any record that does not contain sufficient identifying information to verify the identity of the originating consumer is incomplete." *Adan*, 2018 U.S. Dist. LEXIS 8365 at *23 (citing *Henderson*, 178 F. Supp. at 334 (a seminal case on 1681k(a)(2) jurisprudence)). Here, of course Plaintiff contests the completeness of the criminal record reported. *See* ¶¶35, 36, 60, 100, 105. The reported criminal record lacked key identifiers—such as matching SSN, date of birth, address history, or a mugshot— needed to either confirm Plaintiff as the subject or rule him out. Since the conviction did not belong to Plaintiff, it definitionally could not have verified Plaintiff as the actual subject of the criminal record; yet it also failed to include sufficient information to exclude him. That ambiguity led to adverse action by his prospective employer, proving the record was incomplete. Under § 1681k(a)(2), a record that cannot verify or eliminate the consumer as its subject is, by definition, incomplete— and this one was on all counts.

Amusingly—and quite tellingly—Defendant's argument under § 1681e(b) directly undermines its position under § 1681k(a)(2). Defendant insists it never affirmatively linked the criminal record to Plaintiff, claiming instead that the report merely flagged a potential match for the employer to "consider." But under the well-established definition of completeness, a record is incomplete if it does not allow the user to either link the record to the consumer or exclude them. Defendant cannot simultaneously deny responsibility for making an affirmative association while also claiming the record was "complete"; these positions are mutually exclusive. If the report left the employer in doubt—as Defendant must contend—it failed the completeness requirement by definition.

Defendant's reliance on *Doe v. Sterling Infosystems, Inc.*, No. CV15-04770-RGK (AJWx), 2015 WL 13917196 (C.D. Cal. Dec. 21, 2015), is misplaced. As *Doe* makes clear, § 1681k(a)(2) defines "up-to-date" specifically as reflecting the current public record status of the item reported. See *Doe*, 2015 U.S. Dist. LEXIS 188913, at *13 (citing 15 U.S.C. § 1681k(a)(2)). There is no indication—textual or contextual—that Congress intended "completeness" to mean the same thing. Indeed, collapsing these terms would render "complete" superfluous and contradict the well-settled canon that statutes must be construed to give effect to every word. See *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (courts must avoid interpretations that render statutory terms "inoperative or superfluous"); *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015) (same). The Ninth Circuit echoes this principle, calling the

25

canon against surplusage a "rule of thumb" for statutory interpretation. *United States v. Lopez*, 998 F.3d 431, 441 (9th Cir. 2021). Defendant's conflation of these distinct statutory terms is not only unsupported by the language of the FCRA, it directly contradicts these interpretive mandates and should therefore be rejected.

### F. Plaintiff's State-Law Claims Are Well-Pled

Cal. Civ. Code § 1785.14 requires CRAs to maintain reasonable procedures to ensure they compile and disburse consumer information with maximum accuracy. *White v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 113042, *8 (C.D. Cal. May 16, 2024). "Section 1785.14 is substantially identical to" §1681e(b) of the FCRA." *Id*. (citation omitted). For the same reasons describe above, Plaintiff's state law claims are well-pled.

### G. If Needed, Plaintiff Requests Leave to File an Amended Complaint

Although Plaintiff believes that the Complaint's allegations are adequate, if the Court determines that the Complaint is deficient in any way, Plaintiff respectfully seeks to augment his allegations in an amended complaint. Copies of a Proposed Amended Complaint ("PAC") and a redline comparing the PAC with the operative pleading are attached to the accompanying Rubinov Decl. as Exhibits 1 and 2, respectfully. The PAC expands on the complaint in the following ways:

a. Factual Particularization about the Defendant's matching methodology (e.g., reliance on partial name and date of birth), highlights the availability of distinguishing information (e.g., mugshot, address history, and Social

Security number), and clarifies that these data points could have and should have been consulted to prevent the misattribution of the criminal record;

b. The PAC deepens the articulation of emotional distress by connecting it directly to Plaintiff's history as a recovering alcoholic. It alleges that the false DUI report led Plaintiff's fiancée to suspect a relapse, resulting in the end of their engagement. It also details the stigma felt within Plaintiff's family and the resulting psychological and physical harm, including specific symptoms;

c. The PAC clarifies the initial factual error by acknowledging that Plaintiff did, in fact, receive the background report on December 5, 2024—although he was unaware of it at the time of filing the original complaint—but makes clear that the notice still violated § 1681k(a)(1) because it failed to include the employer's address, a clear and unambiguous statutory requirement, which in turn triggered Defendant's obligation to have maintained and followed strict procedures under § 1681k(a)(2);

d. The revised version provides greater specificity and breadth regarding Plaintiff's damages, including concrete economic losses (e.g., being out of work from December 11, 2024 to March 3, 2025), reputational damage, emotional suffering, and physical manifestations of distress; and

e.  It also corrects minor grammatical errors and incorporates refined language and terminology to more precisely and comprehensively describe the nature and impact of the erroneous and stigmatizing dissemination.

The proposed amendments fall squarely within Rule 15's mandate that leave to amend be freely granted "when justice so requires." This case is still in its infancy and paper discovery has not yet started. Moreover, Plaintiff did not unduly delay and is seeking leave to amend in response to AssureHire's Rule 12(b)(6) motion to dismiss. AssureHire will not be prejudiced in any way by the purported amendments as it will have adequate time to defend against these allegations.

## H. Judicial Notice As To Defendant's Deficient § 1681k(a)(1) Notice as a Matter of Law

Plaintiff respectfully requests that the Court, having taken judicial notice of the subject consumer report attached as Exhibit A to Defendant's Request for Judicial Notice, also acknowledge the undisputed and dispositive fact evident on the face of the document: the notice provided to Plaintiff fails to include the employer's address. This omission constitutes a clear violation of 15 U.S.C. § 1681k(a)(1), which unambiguously requires that the CRA notify the consumer "of the fact that public record information is being reported by the consumer reporting agency, together with the ***name and address*** of the person to whom such information is being reported." (emphasis added).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-64**

Because there is no factual dispute as to whether this address was included—and the document itself is central to Plaintiff's claims and incorporated by reference (as per the Defendant's own admission at Dkt. No. 15-4, Page 2) —Plaintiff respectfully submits that the Court may, and should, make a summary judgement finding at this stage that the § 1681k(a)(1) notice was deficient as a matter of law. *See Razaghi v. Razaghi Dev. Co., LLC*, 2021 U.S. Dist. LEXIS 188237 (D. Nev. Sep. 30, 2021) *(*citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (permitting a court to convert that portion of a motion to dismiss into a motion for summary judgement)). Accordingly, Defendant was obligated to have maintained and followed "strict procedures" to ensure the completeness and currency of the reported public record information under § 1681k(a)(2)—a duty that Plaintiff plausibly alleges was not met.

## V. CONCLUSION

For the foregoing reasons, AssureHire's motion should, respectfully, be denied.

Dated: May 16, 2025      By: */s/ Meir Rubinov*
     Meir Rubinov, NY Bar # 6077887
     CONSUMER ATTORNEYS
     *Admitted Pro Hac Vice*
     68-29 Main Street
     Flushing NY 11367
     T: 718-640-8123
     F: (718) 715-1750
     E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for AssureHire Inc., certifies that this brief contains 5,598 words, which complies with the word limit of L.R. 11-6.1.

## SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby certify that all other signatories listed, on whose behalf this filing is submitted, concur with the contents of this filing, and have authorized the filing.

CONSUMER ATTORNEYS, PLLC

By: */s/ Meir Rubinov*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER ATTORNEYS, PLLC**

By: */s/ Meir Rubinov*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS
**ER-67**

# EXHIBIT 2

Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Admitted Pro Hac Vice*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
25A Crescent Dr. #402
Pleasant Hill, CA 94523
T:(415) 638-9140
E: andrew@ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| RUBEN FLORES, | Case No.: 2:25-cv-01621-WLH-SK |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY TRIAL DEMANDED** |
| ASSUREHIRE, INC., | |
| Defendant. | |

## <u>FIRST AMENDED</u> COMPLAINT

Ruben Flores ("Plaintiff") by and through his counsel brings the following Complaint against AssureHire, Inc. ("Defendant" or "AssureHire") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and

California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785, *et. seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, falsely and/or misleadingly branding Plaintiff as a convicted misdemeanant with a history of reckless intoxication and endangering the public through drunk driving. ~~branding Plaintiff as a convicted misdemeanant with a history of reckless intoxication and endangering the public through drunk driving.~~

## **INTRODUCTION**

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and Cal. Civ. Code § 1785, *et seq*.

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely and/or misleadingly reported to Plaintiff's prospective employer that Plaintiff had been convicted of a misdemeanor for driving under the influence (DUI). This patently false and/or misleading representation was entirely baseless, defamatory, and made with reckless disregard for the truth. ~~reported to Plaintiff's prospective employer that Plaintiff had been convicted of a misdemeanor for driving under the influence (DUI). This egregiously false and~~

2

FIRST AMENDED COMPLAINT

reckless misrepresentation is entirely baseless and defamatory.

4. Plaintiff has never, at any point in his life, been charged with a misdemeanor for driving under the influence (DUI) or any offense related to intoxicated driving.

5. Plaintiff's prospective employer—misled and misguided by Defendant's reporting—rejected his job application after receiving a background check from Defendant that falsely and/or misleadingly attributed a misdemeanor conviction to Plaintiff. This stigmatizing and defamatory misrepresentation—wholly unrelated to Plaintiff—directly deprived him of the employment opportunity. Plaintiff's prospective employer rejected his job application after receiving an employment background check report from Defendant, which falsely attributed a misdemeanor conviction to Plaintiff. This stigmatizing and defamatory misrepresentation entirely unconnected to Plaintiff directly cost him the employment opportunity.

6.5. Defendant's reckless misreporting could have been easily prevented had it exercised even minimal due diligence by reviewing the readily available public court records from Madera County, California. A simple review would have confirmed that the misdemeanor DUI conviction did not belong to Plaintiff, yet Defendant failed to take this basic step before disseminating the false and damaging report to Plaintiff's prospective employer.

7.6. Had Defendant conducted even a cursory review of the public court

3
FIRST AMENDED COMPLAINT
**ER-71**

records, it would have immediately discovered that the criminal record belonged to an entirely different individual—one who is clearly and unmistakably distinguishable from Plaintiff by mug shot, address history, and Social Security number.

8.7.  Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.8.  Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.9.  Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.10. As a result of Defendant's violations of the FCRA and CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family

and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

12.11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and Cal. Civ. Code § 1785.14. Plaintiff further brings this action against Defendant for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

## **PARTIES**

13.12. Ruben Flores ("Plaintiff") is a natural person residing in Norwalk, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal Civ. Code § 1785.3(b).

14.13. Defendant AssureHire, Inc. ("Defendant" or "AssureHire") is a corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 2206 Plaza Dr. Ste. 100, Rocklin, CA 95765. Defendant can be served through its registered agent, C T Corporation System, at 330 N. Brand Blvd. Glendale, CA 91203.

15.14. Among other things, Defendant sells background checks to employers

5

FIRST AMENDED COMPLAINT

for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) and Cal Civ. Code § 1785.3(d) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied

for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.19.While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.20.Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.21.Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.22.Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.23.The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.24.In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer

7
FIRST AMENDED COMPLAINT
**ER-75**

reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.29. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

8

FIRST AMENDED COMPLAINT

31.30.The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32.31.Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33.32.Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.33.Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.34.Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.35.Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the

9
FIRST AMENDED COMPLAINT
ER-77

costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.36.Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Defendant was, and remains, on actual and/or constructive notice that relying on limited identifiers—such as first and last name and date of birth—poses a heightened risk of false positives, particularly for individuals with common names like Plaintiff, who may easily share those identifiers with unrelated third parties.[2] Despite this known risk, Defendant continues to employ such deficient matching procedures, resulting in the dissemination of inaccurate and misleading consumer information, as occurred in Plaintiff's case.

38. A proper quality control review of Plaintiff's report would have unmistakably revealed that Defendant was falsely attributing a misdemeanor DUI conviction to Plaintiff, when in fact, it belonged to an entirely unrelated individual. This glaring error would have been immediately apparent through a simple comparison of the mug shot in the public record, as well as clear discrepancies in address history and Social Security number.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background

---

[2] Fair Credit Reporting; Name-Only Matching Procedures, Page 8.

Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Patriot Environmental Services

40. In or around November 2024, Plaintiff applied for full-time employment as a Field Technician with Patriot Environmental Services.

41. Upon information and belief, Plaintiff successfully overcame all requisite hurdles to securing the applied-for position, except one: the passing of a background check report.

42. On or about November 25, 2024, Plaintiff received a job offer from Patriot Environmental Services indicating that the start date will be on December 11, 2024.

43. However, the offer of employment extended to Plaintiff was contingent upon Plaintiff's passing of a background check ("consumer report").

43.44. Plaintiff was genuinely eager to begin his role with Patriot Environmental Services, relieved and optimistic that after a prolonged period of unemployment, he would once again be able to provide for his family. Confident in the outcome of the required background check—given his lack of any criminal history—Plaintiff fully intended to commence work on the designated start date without hesitation or concern.

11

FIRST AMENDED COMPLAINT

**ER-79**

**Defendant Published an Inaccurate Background Check Report to Patriot Environmental Services**

44.45. Patriot Environmental Services contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

45.46. On or about December 2, 2024, Patriot Environmental Services ordered a criminal background check on Plaintiff from Defendant.

46.47. On or about December 5, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Patriot Environmental Services. On or about December 5, 2024, pursuant to its standard procedures—which, upon information and belief, rely primarily on matching first and last name and date of birth—Defendant generated a consumer report concerning Plaintiff and furnished it to Patriot Environmental Services.

48. Within that consumer report, Defendant published inaccurate false and/or misleading information about Plaintiff.

49. The fact of the matter that Defendant reported and associated this information to Plaintiff is readily evident even from its disclaimer which stated:

"This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report."

50. This disclaimer expressly acknowledges that the information contained

12

FIRST AMENDED COMPLAINT

**ER-80**

in the report is being presented about "the subject of the investigation"—which, in this context, is Plaintiff—and that the reported public records, including criminal activity, are associated with him. The phrase "may be inaccurately associated with the consumer who is the subject of the report" concedes that Defendant is affirmatively linking the information to Plaintiff, while simultaneously attempting to disclaim responsibility for the accuracy of that association.

47.51.Specifically, Defendant's consumer report on Plaintiff brazenly and recklessly smeared his record with a misdemeanor DUI conviction from Madera County, California—an utterly false and baseless conviction that had no connection to him, which appeared in the consumer report as follows:

**County Criminal**
**Madera, CA - FLORES, RUBEN**                                          consider

| | |
|---|---|
| Case Number | CCR076735 |
| Court | Superior |
| Filed Date | 01/22/2024 |
| Offense Date | 12/16/2023 |
| Name | FLORES, RUBEN |
| DOB | 01/08/XXXX |
| Comments | Confirmed By: NAME/DOB |
| Charge | DRIVING UNDER THE INFLUENCE (0.08 % OR MORE) |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 09/18/2024 |
| Sentence | PROBATION: 3 YEARS |
| | JAIL: 5 DAYS |
| | FINE: 1869 |

48.52.The criminal conviction reported by Defendant about Plaintiff to Patriot Environmental Services *does not* belong to Plaintiff.

49.53.Plaintiff has never, at any point in his life, been charged with or convicted of a misdemeanor for driving under the influence (DUI).

13
FIRST AMENDED COMPLAINT
**ER-81**

50.54. A cursory review of the widely available public court records confirms that the criminal record belongs to a distinct and unrelated male, Ruben Flores ("Convicted Misdemeanant Flores").

51.55. Had Defendant actually consulted or obtained the widely available public court records regarding the conviction, it would have seen obvious discrepancies between Convicted Misdemeanant Flores and Plaintiff.

52.56. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Misdemeanant Flores include the following:

> (a)  A mug shot relating to the misdemeanor DUI conviction readily demonstrates that Plaintiff is not the same individual as Convicted Misdemeanant Flores;

> (b)  Plaintiff's current residence is at Norwalk, California, which is confirmed and clearly indicated on the face of the subject consumer report, and has also formerly lived in Lynwood, California, Los Angeles, California, and Mount Holly, North Carolina, yet the public court records regarding the criminal conviction indicate that Convicted Misdemeanant Flores resided in Madera, California at the time he committed the offense;

> (c)  Plaintiff's Social Security number, which was provided to Defendant and is partially contained on the face of the subject consumer report is entirely different than that of Convicted

Misdemeanant Flores.

57.    The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

53.    Specifically, it is unreasonable to rely on only a first name and last name and date of birth match—as Defendant did in this instance, especially in this case where commonly named individuals (like Plaintiff) can share a date of birth.

54.58.Had Defendant adhered to reasonable procedures, it would have easily uncovered that the inaccurate and stigmatizing criminal convictions belonged to a completely unrelated individual—one who is unmistakably distinguishable from Plaintiff by physical appearance, as evident from a publicly available mug shot, as well as clear discrepancies in address history and Social Security number.

59.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

60.    Since Defendant is on actual and/or constructive notice of the fact just a first and last name match and date of birth can regularly yield inaccurate, misleading and damaging outcomes—as it did in the current instance—Defendant's 1681e(b)

15
FIRST AMENDED COMPLAINT
**ER-83**

violation for the subject reporting was done with knowledge of the fact that such matching procedures, in contexts such as Plaintiff's, cannot possibly be in compliance with 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

55.61.Alternatively, Defendant acted with reckless disregard of its duties pursuant to 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

56.    Further, Plaintiff was not informed by Defendant that it had provided the public record information likely to have an adverse impact on employment to Plaintiff's employer at the time the information was provided.Further, Plaintiff was not provided with a proper notice under 15 U.S.C. § 1681k(a)(1), which requires a consumer reporting agency to notify the consumer, at the time it furnishes public record information likely to adversely affect employment, that such information has been provided—along with the name and address of the employer to whom it was sent. Defendant failed to include the employer's address in its notice, despite the provision's clarity and the simplicity of compliance. The statute leaves no room for alternative interpretation: providing both the name and address is a mandatory and unambiguous requirement, which Defendant plainly failed to satisfy.

57.    Accordingly, Plaintiff was not afforded an opportunity to dispute and correct the inaccurate report *before* Defendant published the inaccurate report containing the adverse information to Plaintiff's employer and before Plaintiff's employer made an adverse decision to terminate Plaintiff's employment.

62.    The FCRA has an employment-specific provision designed to address

16
FIRST AMENDED COMPLAINT

**ER-84**

the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse affect on employment, which is to either provide an immediate and ***proper*** notice to the applicant at the time it published public records to the user of the report *or* it must maintain strict procedures to ensure the public record information is accurate, complete, and up to date.

63.    Since Defendant failed to meet the strict and simple requirements of 15 U.S.C. § 1681k(a)(1), Defendant must have abided by § 1681k(a)(2) and maintain strict procedures to ensure the adverse public record information it reported to Defendant about Plaintiff was complete and up to date.

58.64. However, such strict procedures would have unquestionably prevented the false attribution of another individual's criminal record to Plaintiff. Compliance with § 1681k(a)(2) demands more than the baseline matching procedures used to satisfy § 1681e(b); by definition, it requires a heightened standard of accuracy that cannot be met through the same inadequate protocols.

59.65. Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with both, subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; and subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was accurate, complete, and up to date.

17
FIRST AMENDED COMPLAINT
**ER-85**

**Patriot Environmental Services Rescinds Plaintiff's Job Application**

60.66. On or about December 13, 2024, Plaintiff was notified by Patriot Environmental Services that his offer of employment had been rescinded as a direct result of the misdemeanor conviction reported by Defendant.

61.67. Shortly thereafter, on or about December 18, 2024, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the criminal conviction of another, namely Convicted Misdemeanant Flores, was published in the consumer report Defendant sold about Plaintiff to Patriot Environmental Services.

62.68. Plaintiff was very panicked, confused, and concerned about the negative impact of Convicted Misdemeanant Flores's serious criminal conviction reported on the subject consumer report – specifically, the impact of the same on his future.

63.69. Specifically, Defendant matched Plaintiff and Convicted Misdemeanant Flores and published the criminal record of Convicted Misdemeanant Flores onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer.– This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Patriot Environmental Services but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

64.70. On or about January 26, 2025, desperate to secure employment with Patriot Environmental Services and riddled with worry over the far-reaching impacts

of being confused with a convicted misdemeanant, Plaintiff disputed the inaccurate information with Defendant, via email.

65.71.Plaintiff identified himself and provided sufficient information to Defendant to support his dispute.

66.72.Plaintiff specifically disputed the criminal record of Convicted Misdemeanant Flores.

67.73.Plaintiff specifically stated that the criminal record of Convicted Misdemeanant Flores does not belong to Plaintiff.

68.74.To support his dispute, Plaintiff attached a copy of the mugshot photo of Convicted Misdemeanant Flores, obtained from the Madera County Court, as well as a copy of his driver's license for comparison, demonstrating beyond doubt that the individual in the report was not the Plaintiff.

69.75.Plaintiff specifically asked Defendant to correct his consumer report and provide the corrected version to both Patriot Environmental Services and himself.

70.76.On January 27, 2024, Plaintiff received Defendant's response, which stated that the documentation had been forwarded to their Dispute Department.

71.77.On January 28, 2025, the Defendant provided Plaintiff with an updated report, which no longer included the misdemeanor conviction, thereby demonstrating the initial reckless inaccuracy disseminated about Plaintiff.

72.78.Plaintiff forwarded a copy of the updated background report to Patriot Environmental Services. Subsequently, the Plaintiff received a call from Patriot

Environmental Services, during which he was informed that they would need to wait for a representative from Human Resources to return from vacation before issuing a new offer letter.

79.   On or about February 14, 2025, Plaintiff received a second job offer from Patriot Environmental Services. This offer, with a proposed start date of March 3, 2025, was contingent upon the successful completion of the same pre-employment requirements as the first job offer.

73.80. However, given the stigmatizing nature of the original consumer report and the potential it carried to cast lingering doubt or suspicion in the eyes of his prospective employer, Plaintiff ultimately chose not to accept the job offer, seeking instead a clean slate untainted by Defendant's patently false and/or misleading and defamatory reporting.

74.81. Defendant's false report caused damage to the Plaintiff by leaving him unemployed for several additional months that he otherwise would have been employed for had Defendant instituted and implemented reasonable procedures to ensure the maximum possible accuracy of the consumer reports they disseminate.

75.82. Specifically, had the Defendant not reported the inaccurate criminal record, Plaintiff would have successfully fulfilled the pre-employment requirements in December 2024, when he initially applied and received a job offer from Patriot Environmental Service and began to work shortly thereafter.

76.83. Due to Defendant's unreasonable procedures in the first place and

despite Plaintiff's continued efforts to seek employment, Plaintiff continues to remain unemployed as his new start date was set to March 3, 2024, pursuant to his employment offer received on February 14, 2025.

84.     The erroneous report severely disrupted Plaintiff's life, delaying his employment and inflicting significant financial hardship that compromised his ability to support his family. Worse still, the report shattered his personal relationships—his fiancée, genuinely believing that Plaintiff was the convicted misdemeanant Flores, ended their engagement in devastation and disgrace. As a result, Plaintiff was deprived of the ability to celebrate both his and his son's birthdays, deepening his emotional suffering. Struggling to meet even basic expenses, he was forced into the humiliating position of borrowing more money from his parents, an indignity that only compounded his distress.

85.     To underscore the harm caused by Defendant's reporting, Plaintiff previously battled alcoholism and successfully achieved sobriety through significant personal effort. Given the seriousness with which Plaintiff regards his recovery—and his family's vigilance concerning any potential relapse—the inaccurate report struck at the most sensitive and hard-fought area of his life.

77.86. Defendant's patently false and/or misleading defamatory attribution of a DUI conviction inflicted profound emotional harm by undermining the very progress Plaintiff had worked so diligently to achieve, casting doubt in the minds of those closest to him. His fiancée, disbelieving his denial and refusing to engage

further on the issue, ended their engagement, while his children were left believing their father had relapsed.

78.87. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

79.88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

# CLAIMS FOR RELIEF

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

80.89. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

81.90. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

82.91. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

83.92. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

84.93. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

85.94. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the

23
FIRST AMENDED COMPLAINT
**ER-91**

inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

86.95. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

87.96. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### Cal. Civ. Code § 1785.14
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

88.97. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

89.98. Defendant is a "consumer reporting agenc[ies]" as defined by Cal. Civ.

24
FIRST AMENDED COMPLAINT
**ER-92**

Code § 1785.3(d).

90.99. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

91.100.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report[s]" as that term is defined by Cal. Civ. Code § 1785.3(c).

92.101.    Defendant violated Cal. Civ. Code § 1785.14 by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within it.

93.102.    As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and

25
FIRST AMENDED COMPLAINT

debilitating depression.

94.103.	Defendant willfully violated Cal. Civ. Code § 1785.14 in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2). Alternatively, Defendant was negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(1).

95.104.	Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d), § 1785.31(a)(1) and/or § 1785.31(a)(2).

## COUNT III
### 15 U.S.C. § 1681k(a)(1)
**Failure to Provide "At the time" Notice and Failure to Maintain and Follow Strict Procedures to Ensure that Adverse Public Record Information is Accurate, Complete, and Up-to-date**

96.105.	Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

97.106.	The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

98.107.	Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers

which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

99.108.	Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Patriot Environmental Services at the time it provided his consumer report to Patriot Environmental Services, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

100.109.	Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

101.110.	Plaintiff did not learn of the adverse information in Defendant's

27
FIRST AMENDED COMPLAINT
**ER-95**

consumer report until Patriot Environmental Services informed him of the adverse action that was taken against him because of the stigmatizing and erroneous reporting.

102.111. Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

103.112. Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

104.113. Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

105.114. Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

106.115. As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and

28

FIRST AMENDED COMPLAINT

severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

107.116.   Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

108.117.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate

and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 16, 2025

By: */s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Admitted Pro Hac Vice*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
25A Crescent Dr. #402
Pleasant Hill, CA 94523
T:(415) 638-9140
E: andrew@ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

Case 2:25-cv-01621-WLH-SK   Document 15-1   Filed 04/14/25   Page 1 of 24   Page ID
#:73

ELIZABETH A. SPERLING - State Bar No. 231474
esperling@glaserweil.com
ALEXANDER R. MILLER - State Bar No. 294474
amiller@glaserweil.com
**GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP**
600 W. Broadway, Suite 2850
San Diego, CA 92101
Telephone:  (619) 765-4380
Facsimile:   (619) 483-0646

Attorneys for Defendant
AssureHire, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN FLORES, | Case No.: 2:25-cv-01621-WLH-SK |
| Plaintiff, | Assigned to Hon. Wesley L. Hsu |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| ASSUREHIRE, INC., | |
| Defendant. | Hearing Date:  May 30, 2025<br>Hearing Time:  1:30 p.m.<br>Courtroom:      9B |
| | Complaint filed:  February 26, 2025<br>Trial Date:        Not set |

1

3049285

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 6

II.   BACKGROUND .................................................................................................. 8

      A.    Plaintiff's Claims ..................................................................................... 8

      B.    The Disputed Report ............................................................................... 10

      C.    The Parties' Meet And Confer Efforts.................................................... 11

III.  LEGAL STANDARD .......................................................................................... 11

IV.   ARGUMENT ....................................................................................................... 12

      A.    The Complaint Fails To State A Claim Under 15 U.S.C. §
            1681e(b) .................................................................................................. 12

            1.    Plaintiff Fails To Allege Facts Showing The Report
                  Contains Inaccurate Information ................................................. 12

            2.    Plaintiff Fails To Allege Facts Showing Any Inaccuracy
                  Was Due To AssureHire's Failure To Follow Reasonable
                  Procedures To Assure Maximum Possible Accuracy .............. 14

      B.    The Complaint Fails To State A Claim Under 15 U.S.C. §
            1681k(a) .................................................................................................. 16

            1.    AssureHire Provided The Report To Plaintiff And The
                  Employer At The Same Time....................................................... 17

            2.    Plaintiff Fails To Allege Facts Showing AssureHire Did Not
                  Maintain Strict Procedures To Insure Its Report Was
                  Complete And Up To Date .......................................................... 18

      C.    The Complaint Fails To Sufficiently Allege Any Facts Showing
            AssureHire Acted Willfully or Negligently............................................ 19

      D.    The Complaint Fails To Sufficiently Allege Any Facts Showing
            Plaintiff Suffered Actual Damages ........................................................ 20

      E.    The Complaint Fails To State A Claim Under Cal. Civ. Code §
            1785.14 .................................................................................................... 22

V.    CONCLUSION .................................................................................................... 23

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

**ER-100**

3049285

# TABLE OF AUTHORITIES

Page

## CASES

*Abbink v. Experian Info. Sols., Inc.*,
No. SACV191257JFWPJWX, 2019 WL 6838705, (C.D. Cal. Sept. 20, 2019)..................................................................................................................19

*Alvarez v. Galpin Motors, Inc.*,
No. 222CV01598ODWMRWX, 2022 WL 1477421 (C.D. Cal. May 10, 2022)...........................................................................................................12, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................11

*Braun v. Trans Union LLC*,
No. CV 19-06098-CJC(SKX), 2019 WL 13083348 (C.D. Cal. Oct. 10, 2019)................................................................................................................14

*Brooks v. Lundquist Consulting, Inc.*,
No. 22-cv-01916-JST, 2023 WL 3581953, (N.D. Cal. Feb. 23, 2023) ........23

*Campbell v. Anniemac Home Mortgage*,
No. 16-cv-08795, 2017 WL 8180578, (C.D. Cal. Feb. 23, 2017) ...............22

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010)......................................................................14, 22

*Doe v. Sterling Infosystems, Inc.*,
No. CV1504770RGKAJWX, 2015 WL 13917196 (C.D. Cal. Dec. 21, 2015)................................................................................................................18

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018)....................................................................17, 21

*Galea v. Wells Fargo Bank, N.A.*,
388 F. Supp. 3d 1212 (E.D. Cal. 2019)...........................................................23

*Grigoryan v. Experian Info. Sols., Inc.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014).............................................................22

*Guimond v. Trans Union Credit Info. Co.*,
45 F.3d 1329 (9th Cir. 1995)............................................................12, 14, 19

*Hawkins v. S2Verify LLC*,
No. C 15-03502 WHA, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016)...........16

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)..........................................................................11

3

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

**ER-101**

3049285

*Mnatsakanyan v. Goldsmith & Hull APC,*
No. CV 12-4358 MMM PLAX, 2013 WL 10155707 (C.D. Cal. May 14, 2013) ............................................................................................... 20

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) .......................................................... 11

*Olson v. Six Rivers Nat'l Bank,*
111 Cal. App. 4th 1 (2003) ............................................................. 22

*Riser v. Cent. Portfolio Control Inc.,*
No. 3:21-CV-05238-LK, 2022 WL 2209648 (W.D. Wash. June 21, 2022). 12

*Robles v. AMPAM Parks Mech., Inc.,*
No. EDCV 14-02362-VAP, 2015 WL 1952311 (C.D. Cal. Apr. 28, 2015) ................................................................................................. 20

*Samia v. Experian Info. Sols., LLC,*
2022 WL 298369, (S.D. Cal. Feb. 1, 2022) ................................... 22

*Sion v. SunRun, Inc.,*
2017 WL 952953, (N.D. Cal. Mar. 13, 2017) ............................... 22

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ................................................................. 17, 21

*Syed v. M-I LLC,*
No. CIV. 1:14-742 WBS, 2014 WL 4344746, (E.D. Cal. Aug. 28, 2014) ... 20

*W. Mining Council v. Watt,*
643 F.2d 618 (9th Cir. 1981) ................................................... 12, 15

*White v. Experian Information Sols., Inc.,*
No. 2:23-CV-05591-DSF-PVC, 2024 WL 4846759 (C.D. Cal. Mar. 25, 2024) ................................................................................................ 16

## **FEDERAL STATUTES**

15 U.S.C. § 1681 ...................................................................................... 7

15 U.S.C. § 1681e(b) ....................................................... 9, 11, 13, 14, 18, 22

15 U.S.C. § 1681k(a)(1) ....................................................................... 9, 15

15 U.S.C. § 1681k(a)(2) ..................................................................... 15, 17

15 U.S.C. § 1681n(a) ............................................................................. 18

15 U.S.C. § 1681o(a) ............................................................................. 18

15 U.S.C. § 1681o(a)(1) ......................................................................... 20

U.S.C. § 1681b .................................................................................. 7, 11

Glaser Weil

## STATE STATUTES

Cal. Civ. Code § 1785.14................................................................................9, 21

Cal. Civ. Code § 1785.14 (b).............................................................................22

## FEDERAL RULES

Fed. R. Civ. Proc., Rule 12(b)(6)..........................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

**ER-103**

3049285

## I.    <u>INTRODUCTION</u>

Plaintiff Ruben Flores' ("Plaintiff") action centers on his contention that Defendant AssureHire, Inc. ("AssureHire") falsely reported to Plaintiff's potential employer Patriot Environmental Services (the "Employer") that Plaintiff was recently convicted of driving under the influence, when in fact the conviction belonged to another Ruben Flores who also resides in California. Plaintiff claims that as a result he lost a *potential* job offer from Employer that was contingent, in part, on his passing a criminal background check. But that is only part of the story. As stated at the top of Plaintiff's Confidential Background Check Report from AssureHire dated December 5, 2024 (the "Report"), the Report explicitly "**does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records . . . .**" *See* AssureHire's Request for Judicial Notice ("RJN") Ex. A. That is why, when the report lists the public records that reflecting prior criminal conduct, the Report states only that Employer should "consider" such information in evaluating Plaintiff for employment.

Moreover, the Report was provided to Plaintiff at the same time as Employer. The fact that Plaintiff took no action with Employer to prove that the wrong Ruben Flores was identified in the Report for close to two (2) months is Plaintiff's neglect. And AssureHire can only run a background check on someone using the information provided by Employer. No facts are alleged that AssureHire did anything wrong by running a background check on "Ruben Flores" in California and providing results on "Ruben Flores" in California.

Plaintiff alleges he applied to Employer for a position as a full-time "Field Technician." Compl. ¶ 40. Although the Complaint is short on facts, presumably this position involves driving to different locations to perform field work. Thus, it was no doubt important to Employer that Plaintiff did not have DUIs or other criminal convictions on his record that made him unfit to safely drive. AssureHire, the background reporting agency trusted by Employer and countless other businesses to

6

3049285

provide confidential background check reporting on potential employees, has a duty to provide accurate reporting. This allows businesses to make informed hiring decisions.

When AssureHire prepared Plaintiff's background check in this case it reported on all criminal misconduct that Employer specifically requested. In this instance, it turns out Plaintiff was not the same "Ruben Flores" listed in the relevant criminal records. But AssureHire can only run searches on individuals using the information provided by prospective employers. It also appears that Employer failed to provide Plaintiff with the required statutory notice before rescinding Plaintiff's job offer based on the Report. *See* 15 U.S.C. § 1681b. Although unfortunate, this is not grounds for a claim against AssureHire. AssureHire accurately reported available public records information based on information provided by Employer and then promptly updated the Report after Plaintiff brought the discrepancy to its attention nearly two months later. Once the discrepancy was corrected, Plaintiff quickly received another job offer from Employer. Thus, Plaintiff has no damages and no injury in fact as against AssureHire.

As set forth below, besides being directed at the wrong party, Plaintiff's claims against AssureHire all fail because Plaintiff fails to allege sufficient, well-pleaded facts to establish any of his claims. In particular, Plaintiff fails to establish that AssureHire reported anything that was inaccurate, that AssureHire failed to provide proper notice of the Report to Plaintiff, or that AssureHire acted either negligently or willfully in doing so—let alone that Plaintiff actually suffered any damages.

Despite repeatedly and extensively meeting and conferring on these issues, Plaintiff was unwilling to amend his Complaint in any way to address the deficiencies identified in this Motion to Dismiss. Accordingly, for the reasons set forth below, AssureHire requests that the Court grant its Motion and dismiss Plaintiff's Complaint in its entirety.

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

## II.    BACKGROUND

### A.    Plaintiff's Claims

Plaintiff filed this action on February 26, 2025, alleging claims for violation of the Fair Credit Reporting Act (15 U.S.C. §§ 1681, *et seq.*) and the California Consumer Reporting Agencies Act (Cal. Civ. Code § 1785, *et. seq.*). Plaintiff alleges that in or around November 2024 he applied for employment as a Field Technician with Patriot Environmental Services. Compl. ¶ 41. On or about November 25, 2024, Plaintiff received a job offer from Employer contingent on passing a background check. *Id.* at ¶¶ 42-43. Employer ordered a criminal background check on Plaintiff from AssureHire. *Id.* at ¶ 45. On or about December 5, 2024, AssureHire completed its Report and provided the same to both Plaintiff and Employer. *Id.* at ¶ 46; *see* RJN Ex. A.

Plaintiff alleges that the Report included a misdemeanor DUI conviction for a Ruben Flores in Madera County, California. *See* Compl. ¶¶ 48-53. Plaintiff contends that AssureHire generated this Report "in accordance with its standard procedures," but does not allege what those procedures are. *Id.* at ¶ 46. Instead, Plaintiff alleges that "[c]riminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data" and involve "little to no manual, in-person review." *Id.* at ¶ 32. Plaintiff contends that a proper quality control of the Report "would have unmistakably revealed that Defendant was falsely attributing a misdemeanor DUI conviction to Plaintiff" based on "the mug shot in the public record, as well as clear discrepancies in [Plaintiff's] address history and Social Security number." *Id.* at ¶ 38. But Plaintiff does not allege that Employer provided AssureHire with Plaintiff's photo, address history, Social Security Number, or any other identifying information to differentiate him from any other Ruben Flores in California.

Plaintiff further alleges that, on or about December 13, 2024, he was notified by Employer that his employment offer had been rescinded as a result of the misdemeanor conviction listed in the Report. Compl. ¶ 61. Plaintiff claims he obtained a copy of the Report on or about December 18, 2024, and was shocked about the criminal conviction.

8

3049285

*Id.* at ¶ 62. Although he claims he "was very panicked" and "desperate" and "riddled with worry" about being misidentified, he waited about six weeks to send an email disputing that the Ruben Flores in the Report was not him. *Id*. at ¶¶ 63, 65.

It is noteworthy that Plaintiff is careful to sidestep the issue of when he actually first obtained the Report. It was sent to him on December 5, 2024, simultaneously with Employer. *See* RJN Ex. A; Miller Decl. ¶ 5. Plaintiff inexplicably waited until almost two months — until January 26, 2025 — before sending AssureHire a simple email saying, in essence, "that's not me" about the Report. *Id.* at ¶ 65. To support his dispute, Plaintiff provided a copy of the mugshot of the criminal misdemeanant in the Report and a copy of his driver's license, as without this information it was not readily apparent that Plaintiff and the misdemeanant were not the same person. *Id.* at ¶ 69.

Very quickly thereafter, just two days later, on January 28, 2025, AssureHire provided Plaintiff with an updated report no longer listing the DUI conviction. *Id.* at ¶ 72. Thus, had Plaintiff acted with diligence when he first received the Report on December 5, 2024, no doubt he could have cleared up the discrepancy very quickly and avoided all of the problems that resulted from his conditional offer of employment being rescinded.

Plaintiff sent a copy of the new report to Employer and was informed that they would issue Plaintiff a new offer letter. *Id.* at ¶ 73. Plaintiff did receive a second job offer from Employer on or about February 14, 2025, with a proposed start date of March 3, 2025. *Id.* at ¶ 74. Plaintiff fails to allege whether he accepted the second job offer.

On the basis of these allegations, Plaintiff asserts three claims against AssureHire for: (1) failure to follow reasonable procedures to assure the maximum possible accuracy of the report under 15 U.S.C. section 1681e(b); (2) failure to follow reasonable procedures to assure the maximum possible accuracy of the report under California Civil Code section 1785.14; and (3) failure to provide "at the time notice" to both Plaintiff and Employer and failure to maintain and follow strict procedures to

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

Glaser Weil

ensure that adverse public record information is complete and up to date under 15 U.S.C. § 1681k(a).

**B.**    **The Disputed Report**

Although referenced throughout Plaintiff's Complaint, notably absent from the Complaint is a copy of the actual AssureHire Report on which Plaintiff's action is based. As this Report is integral to the determination of whether Plaintiff has adequately stated any claim for relief, AssureHire has requested that the Court take judicial notice of this document, the authenticity of which is undisputed and indisputable. *See* RJN.

Critically, for purposes of this Motion, the Report begins with the following disclosure in bold lettering:

> **This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.**

*See* RJN Ex. A. The Report also states on its face that it was prepared for Employer, Patriot Environmental Services, and that the Report was completed on December 5, 2024. The Report then lists a number of criminal records databases that were searched with Plaintiff's name with the "status/score" as "complete" or "clear," and lists one potential match with Plaintiff's name in Madera County as "consider." The summary of this potential match, which forms the basis of Plaintiff's claims, also includes the word "consider" in the upper right hand corner and indicates that the potential match is "[c]onfirmed by NAME/DOB." *See* Compl. ¶ 48. Plaintiff does not argue that AssureHire ran its search using the wrong name or date of birth, or that the information presented was inaccurately transcribed from public records. The Report concludes with four pages of disclosures summarizing Plaintiff's rights under the Fair Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA").

3049285

### C.     The Parties' Meet And Confer Efforts

In accordance with Local Rule 7-3 and the Court's Standing Order, counsel for the parties met and conferred extensively in advance of this Motion, including by videoconference on April 4, 2025, by telephone on April 8, 2025, and also by email. *See* Miller Decl. ¶¶ 2-6. During those meet and confers, Defendant's counsel discussed at length the issues raised in this Motion and sought to narrow the issues if possible or an agreement from Plaintiff's counsel to amend the Complaint to avoid unnecessary motion practice. Unfortunately, Plaintiff's counsel was not receptive to those efforts. In particular, during the telephonic meet and confer on April 8, 2025, after Defendant's counsel reminded Plaintiff's counsel of the Court's standing order regarding meet and confers, Plaintiff's counsel declared that they would not "litigate the whole case by phone," and that Plaintiff is unwilling to amend the Complaint at this stage regardless of AssureHire's arguments and dispositive evidence. *See id.* at ¶ 6. Plaintiff's counsel stated that, rather than continue to meet and confer, the parties could address their respective positions further in briefing to the Court. *Id.* Accordingly, AssureHire was required to proceed with the instant Motion.

## III.   LEGAL STANDARD

A motion to dismiss under FRCP Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Dismissal is proper when the complaint either (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57). Thus, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court also may not "assume the truth of legal conclusions . . . cast

11

Glaser Weil

3049285

in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV. <u>ARGUMENT</u>

In his Complaint, Plaintiff fails to allege that Employer provided him notice before taking an adverse employment action based on the Report, as required. *See* 15 U.S.C. § 1681b. Had Employer done so, discrepancies in the Report could have been promptly resolved without further issue. Nevertheless, Plaintiff fails to state any claim against AssureHire for the following reasons.

### A. <u>The Complaint Fails To State A Claim Under 15 U.S.C. § 1681e(b)</u>

Plaintiff's inaccurate reporting claim under 15 U.S.C. section 1681e(b) must be dismissed because Plaintiff fails to allege sufficient facts to support his claim.

Under 15 U.S.C. section 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Thus, to state a claim under Section 1681e(b), Plaintiff must allege facts demonstrating that "the credit reporting agency prepared a report containing inaccurate information." *Alvarez v. Galpin Motors, Inc.*, No. 222CV01598ODWMRWX, 2022 WL 1477421, at *2 (C.D. Cal. May 10, 2022). "[H]owever, an agency will *not* be liable if it establishes that it followed reasonable procedures." *Id.* (emphasis original) citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Plaintiff's inaccurate reporting claim fails on both elements.

#### 1. <u>Plaintiff Fails To Allege Facts Showing The Report Contains Inaccurate Information</u>

First, Plaintiff fails to allege well-pleaded facts showing that the Report contains any "inaccurate information." *See, e.g.*, *Riser v. Cent. Portfolio Control Inc.*, No. 3:21-CV-05238-LK, 2022 WL 2209648, at *3-4 (W.D. Wash. June 21, 2022) (dismissing claim under Section 1681e(b) for failing to allege *prima facie* showing of inaccurate reporting). Plaintiff summarily alleges that AssureHire "falsely reported to Plaintiff's

Case: 25-6594, 05/04/2026, DktEntry: 25.1, Page 111 of 162

Case 2:25-cv-01621-WLH-SK Document 15-1 Filed 04/14/25 Page 13 of 24 Page ID #:85

prospective employer that Plaintiff had been convicted of a misdemeanor for driving under the influence (DUI)." Compl. ¶¶ 3; *see id.* at ¶¶ 47-48. However, Plaintiff fails to mention that the Report itself does ***not*** state that Plaintiff was convicted of the alleged offense. Instead, the Report includes an unambiguous disclosure at the top in bold:

> **This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report.**

*See* RJN Ex. A. The Report then goes on to list a number of criminal records databases that were searched with Plaintiff's name with the "status/score" as "complete" or "clear," and lists one potential match with Plaintiff's name in Madera County as "consider." The Report also includes a summary of information relating to the potential match with the word "consider" in the upper right hand corner and indicates that the potential match is "[c]onfirmed by NAME/DOB." *See* Compl. ¶ 48.

Plaintiff does not, and cannot, dispute that the public record information reflected in the Report is in fact accurate. Plaintiff admits that the name searched was accurate. *See* Compl. ¶ 51. And Plaintiff does not allege that the date of birth searched was inaccurate. *See Id.* at ¶ 53. Nor does he allege that AssureHire searched and provided results that differed from what Employer provided it and requested it to search. Instead, Plaintiff claims only that the Report was false because "[t]he criminal conviction reported by Defendant about Plaintiff to Patriot Environmental Services ***does not*** belong to Plaintiff." *Id.* at ¶ 49. But that is not what the Report says. AssureHire never represented that the conviction belonged to Plaintiff. The Report indicates only that AssureHire searched public records using the identifying information provided to it and accurately reports information copied from public records and that, based on the information provided, the employer should "consider" whether the entry potentially relates to Plaintiff or whether it may be "inaccurately associated with the consumer who is the subject of the report." *See* RJN Ex. A.

Glaser Weil

13

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

ER-111

"In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond*, 45 F.3d at 1333; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("The inaccuracy requirement comports with the purpose of the FCRA, which is to protect consumers from the transmission of inaccurate information about them."). As the information contained in the Report was factually accurate, Plaintiff fails to sufficiently allege an inaccuracy and his claim must be dismissed. *See Braun v. Trans Union LLC*, No. CV 19-06098-CJC(SKX), 2019 WL 13083348, at *2 (C.D. Cal. Oct. 10, 2019) (dismissing § 1681e(b) claim because "Plaintiff does not allege that her report was factually inaccurate" and "Courts have concluded that a CRA's failure to provide additional information to explain the significance of an otherwise accurate report entry is not the type of misleading omission that is sufficient to fulfill the inaccuracy element of a § 1681e(b) claim."). Indeed, if there was any inaccurate information, it was what Employer provided to AssureHire. AssureHire can only research information accurately with the information provided to it by prospective employers. Thus, if all AssureHire received was the name Ruben Flores and that he resides in California, without more AssureHire cannot guarantee that the results will be for Plaintiff as opposed to any other Ruben Flores in California.

**2.** **Plaintiff Fails To Allege Facts Showing Any Inaccuracy Was Due To AssureHire's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy**

Second, even if Plaintiff could allege that the Report contains an inaccuracy, which he cannot, the Section 1681e(b) claim still fails because Plaintiff fails to allege well-pleaded facts showing that AssureHire failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

14

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

**ER-112**

3049285

In the Complaint, Plaintiff summarily alleges that "Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers" (Compl. ¶ 8), and that "[o]n or about December 5, 2024, *in accordance with its standard procedures*, Defendant completed its consumer report about Plaintiff and sold the same to Patriot Environmental Services." *Id.* ¶ 46 (emphasis added). But Plaintiff never alleges what these "standard procedures" supposedly were, let alone why or how they were unreasonable. And to the extent Plaintiff contends that AssureHire could have concluded based on public information that the DUI conviction did not belong to Plaintiff "through a simple comparison of the mug shot in the public record, as well as clear discrepancies in address history and Social Security number" (*id.* at ¶ 38), Plaintiff fails to allege any facts showing that AssureHire was provided a photo of Plaintiff or his address history or social security number; let alone that such information of the misdemeanant was publicly available. Instead, AssureHire accurately reported, based on the public records and the information provided by Employer, that Employer should "consider" whether the Madera County criminal charges matching Plaintiff's name and date of birth belong to Plaintiff. This type of thorough and accurate background reporting is necessary to protect the public and ensure that employers can thoroughly vet potential candidates—especially where criminal records indicate that an individual with the same name was recently found guilty of DUI.

When counsel for the parties met and conferred on this issue, Plaintiff's counsel admitted that the Complaint does not include allegations relating to AssureHire's actual procedures in this matter, and instead suggested that it did not matter because discovery could later be obtained on this issue. *See* Miller Decl. ¶ 3. That is not the law. The Complaint must articulate "enough facts to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570), and the Court may not "assume the truth of legal conclusions . . . cast in the form of factual allegations." *W. Mining Council*, 643 F.2d at 624. Courts in this District have dismissed Section 1681e(b) claims on this basis.

3049285

*See, e.g.*, *Alvarez v. Galpin Motors, Inc.*, No. 222CV01598ODWMRWX, 2022 WL 1477421, at *2 (C.D. Cal. May 10, 2022) ("Alvarez does not allege any facts related to procedures or policies that were purportedly unreasonable, nor how Trans Union's purported failure to follow reasonable procedures caused Alvarez any damages. Thus, Alvarez fails to state a claim against Trans Union for violation of the FCRA."); *White v. Experian Information Sols., Inc.*, No. 2:23-CV-05591-DSF-PVC, 2024 WL 4846759, at *3 (C.D. Cal. Mar. 25, 2024) (dismissing Section 1681e(b) claim because "[plaintiff] has asserted no allegations that either [defendant] prepared any report that included an inaccuracy or that [defendant's] procedures were 'unreasonable.'"). Nor may a plaintiff go on a fishing expedition in the hopes of gathering helpful evidence after burdening a defendant with extensive and expensive discovery. As Plaintiff does not even attempt to articulate what AssureHire's procedures were here, let alone how they were deficient, dismissal is appropriate.

**B.     The Complaint Fails To State A Claim Under 15 U.S.C. § 1681k(a)**

Plaintiff's failure to notify claim under 15 U.S.C. section 1681k(a) must also be dismissed. This provision requires a consumer reporting agency furnishing a consumer report for employment purposes to **either** notify the consumer that a report is being provided to an employer (15 U.S.C. §1681k(a)(1)) **or** maintain strict procedures to insure such reports are complete and up to date. 15 U.S.C. §1681k(a)(2). Thus, to state a claim against AssureHire under this provision, Plaintiff must allege sufficient well-pleaded facts showing that AssureHire did neither. *See, e.g.*, *Hawkins v. S2Verify LLC*, No. C 15-03502 WHA, 2016 WL 107197, at *2 (N.D. Cal. Jan. 11, 2016) ("Section 1681k(a) has two prongs, and a credit reporting agency can satisfy it by doing one of two things, either (1) notifying the consumer that potentially adverse information is being reported about him at the time it is being reported, or (2) maintaining strict procedures to ensure the information being reported is complete and up to date.")

Plaintiff has not, and cannot, do so. Accordingly, this claim should be dismissed.

**1.** <u>**AssureHire Provided The Report To Plaintiff And The Employer At The Same Time**</u>

Plaintiff alleges that "[u]pon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Patriot Environmental Services at the time it provided his consumer report to Patriot Environmental Services." Compl. ¶ 100. But this is incorrect. Plaintiff admits that AssureHire completed its Report and provided the same to Employer on or about December 5, 2024. *Id.* ¶ 46. This is the same date reflected in the Report that was provided to Plaintiff. *See* RJN Ex. A.

When the counsel for the parties discussed this defect during their meet and confer efforts and noted that AssureHire's records indicate Plaintiff received the Report on December 5, 2025, and viewed the Report on December 7, 2025, Plaintiff's counsel refused to amend the Complaint or withdraw the claim. Miller Decl. ¶ 5. He instead argued that, even though Plaintiff received the Report at the same time as Employer, there was still a violation of the statute because the Report only lists Employer's name and not its address. *Id.*

This assertion is specious. Plaintiff makes no factual allegations in the Complaint about omitting Employer's address. Nor does Plaintiff allege how he could have possibly been damaged by this omission sufficient to establish Article III standing. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation. . . . [N]ot all inaccuracies cause harm or present any material risk of harm."); *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("[T]he plausible pleading of a flat out violation of a statutory provision will not necessarily support a civil law suit in federal court."). Defendant's counsel is not aware of any Ninth Circuit authority holding that standing exists to assert a claim under 15 U.S.C. § 1681k(a) for listing only an employer's name but not its address. Nor has any been provided by Plaintiff.

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

## 2. **Plaintiff Fails To Allege Facts Showing AssureHire Did Not Maintain Strict Procedures To Insure Its Report Was Complete And Up To Date**

Even if the Report was not provided to Plaintiff and Employer at the same time, Plaintiff's Section 1681k(a) claim still fails because Plaintiff fails to allege well-pleaded facts showing that AssureHire failed to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a)(2).

*First*, as in Plaintiff's Section 1681e(b) claim, Plaintiff fails to allege any facts as to what AssureHire's procedures were here, let alone that they were not strict and designed to insure that the public record information reported was complete and up to date. *See supra* § IV(A)(2). Without such allegations, Plaintiff's claim fails.

*Second*, even if Plaintiff had alleged what AssureHire's procedures were and how they were deficient, Plaintiff does not dispute that the public records information reported by AssureHire was "complete." Instead, Plaintiff alleges only that such information was inaccurate because it did not relate to Plaintiff. As other courts have noted, Plaintiff is conflating "completeness" and "accuracy." *See Doe v. Sterling Infosystems, Inc.*, No. CV1504770RGKAJWX, 2015 WL 13917196, at *5 (C.D. Cal. Dec. 21, 2015) ("While § 1681k(a)(2) requires 'complete' and 'up-to-date' information, it says nothing of accuracy; rather, the requirement that information be 'accurate' is found in an entirely different provision, § 1681e(b)."). In short, "just because a report contains gratuitous and factually false information, thereby making it 'inaccurate,' does not mean it is missing pertinent information to render it 'incomplete.'" *Id.*

As Plaintiff does not dispute that the information in the Report is "complete," and instead only challenges whether it is "accurate," Plaintiff's Section 1681k(a) claim fails as a matter of law. *See Sterling Infosystems, Inc.*, No. CV1504770RGKAJWX, 2015 WL 13917196, at *5 (dismissing Section 1681k(a)(2) claim because "the

18

3049285

consumer report at issue contains excessive information but does not omit any material facts about the Plaintiff's criminal history. Therefore, while the report can be reasonably characterized as 'inaccurate' (insofar as it contains false information), it cannot be described as 'incomplete' (as it is not missing any information)."). Accordingly, Plaintiff's Section 1681k(a) claim must be dismissed.

**C. The Complaint Fails To Sufficiently Allege Any Facts Showing AssureHire Acted Willfully or Negligently**

Plaintiff's FCRA claims also fail because Plaintiff fails to allege well-pleaded facts showing that AssureHire acted willfully or negligently. *See* 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681o(a).

"The FCRA does not impose strict liability." *Guimond*, 45 F.3d at 1333. Instead, the FCRA only provides for civil liability where there has been either negligent or willful noncompliance with the FCRA's requirements. *See* 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681o(a). Thus, to state a claim, "the plaintiff's complaint must allege specific facts as to the defendant's mental state . . . . Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Abbink v. Experian Info. Sols., Inc.*, No. SACV191257JFWPJWX, 2019 WL 6838705, at *5 (C.D. Cal. Sept. 20, 2019).

Plaintiff fails to allege any facts whatsoever demonstrating that AssureHire negligently or willfully failed to comply with the FCRA. During the parties' meet and confer efforts, Plaintiff's counsel indicated that, while not explicitly alleged, AssureHire's negligent or willful noncompliance can be inferred generally from the Complaint. *See* Miller Decl. ¶ 3. But that is insufficient, especially as Plaintiff does not make any factual allegations about what information Employer provided to AssureHire or what AssureHire's procedures for creating the Report were. Nor do Plaintiff's allegations address the prominent disclaimer at the top of the Report stating that "**[t]his report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public**

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

**records . . .**" and that the Report merely indicates that the employer should "consider" the Madera County criminal results. RJN Ex. A (emphasis original).

As there are no well pleaded factual allegations regarding AssureHire's mental state, Plaintiff's FCRA claims fail for this additional reason as well. *See, e.g.*, *Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM PLAX, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013) (dismissing FCRA claim where plaintiff failed to allege facts showing defendant's "state of mind" in violating FCRA); *Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 4344746, at *3 (E.D. Cal. Aug. 28, 2014) ("Absent plaintiff's allegation that defendant's conduct was objectively unreasonable, he is left with only bare allegations that defendants' conduct was 'willful' and 'reckless.' But these allegations, which consist only of 'labels and conclusions' without factual content, are not sufficient to state a claim that defendants' conduct was willful."); *Robles v. AMPAM Parks Mech., Inc.*, No. EDCV 14-02362-VAP, 2015 WL 1952311, at *5 (C.D. Cal. Apr. 28, 2015)) (dismissing claim for willful violation of the FCRA where the plaintiff failed to sufficiently plead that the defendant willfully breached the FCRA). Accordingly, Plaintiff's FCRA claims must be dismissed.

**D.     The Complaint Fails To Sufficiently Allege Any Facts Showing Plaintiff Suffered Actual Damages**

Plaintiff's claims for negligent violations of the FCRA also fail to the extent Plaintiff fails to allege any facts showing that he suffered actual damages. *See* 15 U.S.C. § 1681o(a)(1) (only "actual damages" may be recovered for a negligent violation of the FCRA). Plaintiff alleges that he has purportedly suffered a long list of boilerplate damages resulting from AssureHire's accurate reporting that Employer should "consider" whether the Madera County criminal charges related to Plaintiff. *See* Compl. ¶¶ 11, 80, 86, 94, 107. Tellingly, however, Plaintiff fails to allege any facts showing that he actually incurred such damages. For example, Plaintiff claims he was damaged from "loss of employment opportunities" after Employer withdrew Plaintiff's job offer on or about December 13, 2024. *Id.* at ¶ 61. Plaintiff then alleges that he waited at least

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

3049285

six weeks until on or about January 26, 2025 to dispute the Report, which was corrected within two days, and Plaintiff received another job offer from Employer.[1] *Id.* at ¶¶ 65, 72, 74. Critically, however, ***Plaintiff never alleges that he accepted this job offer***. If Plaintiff ultimately decided not to accept the job when it was offered a second time, he cannot have been damaged by the previous withdrawal of the offer. Defense counsel inquired about this issue during the parties' meet and confer efforts, but Plaintiff's counsel could not or would not confirm whether Plaintiff ever did in fact accept the second job offer and refused to provide any further information. *See* Miller Decl. ¶ 6.

Nor does Plaintiff accept any responsibility for his own delay in noticing and clearing up the discrepancy. He received the Report on December 5, 2024. He did nothing about it. On December 13, 2024, Employer notified Plaintiff that his job offer was rescinded because of the misdemeanor conviction reported in the Report. Compl. ¶ 61. Plaintiff waited 52 days after he received the Report, 44 days after his job offer was rescinded based on the Report, before finally disputing the information in the Report. *Id*. at ¶ 65. When he did, it took AssureHire only two days to issue a corrected report. *Id*. at ¶ 72. Employer then issued Plaintiff a second job offer. *Id*. at ¶ 74.

Plaintiff does not allege any injury in fact, or concrete substantial harm as the result of any violation of FCRA by AssureHire. *See Spokeo, Inc.*, 578 U.S. at 341; *Dutta*, 895 F.3d at 1173. He does not even allege that he accepted the second job offer and started working at Employer. All of the alleged harms Plaintiff claims to have suffered are conclusory. To the extent Plaintiff claims that his fiancée left him "genuinely believing that Plaintiff was the convicted misdemeanant Flores" (Compl. ¶ 78), Plaintiff never alleges when the fiancée supposedly ended the engagement and whether the fiancée ever viewed the Report—let alone why the fiancée would believe Plaintiff was the convicted misdemeanant when Plaintiff himself claims that it was "obvious" they are two different people. *See id.* at ¶¶ 51, 53 ("A mug shot relating to

---

[1] Plaintiff was told that he would receive a new offer letter even sooner, but there was a delay because a human resources employee was out on vacation. *See* Compl. ¶ 73.

21

3049285

Glaser Weil

the misdemeanor DUI conviction readily demonstrates that Plaintiff is not the same individual as Convicted Misdemeanant Flores.").

Nor does Plaintiff allege any facts supporting his generic allegations of purported reputational or emotional harm. *See, e.g.*, *Campbell v. Anniemac Home Mortgage*, 16-cv-08795, 2017 WL 8180578, at *2 (C.D. Cal. Feb. 23, 2017) (finding the plaintiff's allegations that she suffered "emotional distress, humiliation and embarrassment," as well as a general allegation that the plaintiff's "credit inquiries may negatively impact credit scores" insufficient to establish actual damages.); *Sion v. SunRun, Inc.*, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) (dismissing claims for negligent violation of the FCRA because "[a]lthough actual damages can include emotional distress, a plaintiff must support her claim for pain and suffering with something more than her own conclusory allegations, such as specific claims of genuine injury.") (internal brackets and quotation marks omitted); *Samia v. Experian Info. Sols., LLC*, 2022 WL 298369, at *4 (S.D. Cal. Feb. 1, 2022) (same). Again, by Plaintiff's own admission, once he raised the issue with AssureHire the Report was rapidly updated to remove the Madera County criminal record within two days. *See* Compl. ¶¶ 65, 72.

As Plaintiff fails to sufficiently allege any actual damages, his claims for negligent violations of the FCRA must be dismissed.

**E.      The Complaint Fails To State A Claim Under Cal. Civ. Code § 1785.14**

Plaintiff's claim under California Civil Code section 1785.14 for allegedly failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" fails for the same reasons his FCRA claims fail.

The CCRAA is "substantially based on the Federal [FCRA]." *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3 (2003)). Therefore, "judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (quoting *Olson*, 111 Cal. App. 4th at 12); *see, also Brooks v. Lundquist Consulting, Inc.*, No. 22-cv-

22

3049285

01916-JST, 2023 WL 3581953, at *2-3 (N.D. Cal. Feb. 23, 2023) (discussing similarities between 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14 (b)).

Plaintiff's claim under Section 1785.14 is predicated on the exact same facts and legal theories as his FCRA claims. *See* Compl. ¶¶ 89-96. Thus, Plaintiff's derivative Section 1785.14 fails for the same reasons Plaintiff's FCRA claims fail, and should also be dismissed. *See, e.g.*, *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1217 (E.D. Cal. 2019) (dismissing CCRAA claims for the same reasons as FCRA claims).

## V.   **CONCLUSION**

For the reasons set forth above, AssureHire respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

DATED:  April 14, 2025

Respectfully submitted,

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By: */s/ Elizabeth A. Sperling*
      Elizabeth A. Sperling
      Alexander R. Miller
      Attorneys for Defendant
      AssureHire Inc.

Glaser Weil

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for AssureHire Inc., certifies that this brief contains 5,939 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 14, 2025

Respectfully submitted,

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By:  */s/ Elizabeth A. Sperling*
       Elizabeth A. Sperling
       Alexander R. Miller
       Attorneys for Defendant
       AssureHire Inc.

MEMORANDUM OF POINTS AND AUTHORITIES ISO
ASSUREHIRE, INC.'S MOTION TO DISMISS COMPLAINT

Glaser Weil

3049285

# EXHIBIT A

CONFIDENTIAL BACKGROUND CHECK REPORT
compliance: CALIFORNIA

# Flores, Ruben N/A



**SSN:** XXX-XX-█
**DOB:** █/XXXX

**MITRATECH**
**AssureHire**
2206 Plaza Drive #100
Rocklin, CA 95765
www.assurehire.com
1-737-258-2571

prepared for: Patriot Environmental Services

## California Applicant Disclosure

**This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report. AssureHire shall provide a consumer seeking to obtain a copy of a report or making a request to review a file, a written notice in simple, plain English and Spanish setting forth the terms and conditions of his or her right to receive all disclosures, as provided in Section 1786.26. AssureHire deberá suministrarle a un consumidor que trate de obtener una copia de un informe o solicite revisar un archivo una notificación por escrito en inglés y español lisos y llanos, en la que se establezcan los términos y las condiciones de su derecho a recibir toda la información, como se dispone en la Sección 1786.26.**

| ORDER | POSITION/PACKAGE | BILLCODE | SUBMITTED | COMPLETED | STATUS/SCORE |
|---|---|---|---|---|---|
| 2361749001130215284 | STANDARD | 90744 | 2024-12-02 | 2024-12-05 | CONSIDER |

| | | | | |
|---|---|---|---|---|
| SSN Address Trace | | 2024-12-02 | 2024-12-02 | complete |
| National DOJ Sex Offender **FLORES, RUBEN** | | 2024-12-02 | 2024-12-03 | clear |
| National Criminal Database **FLORES, RUBEN** | | 2024-12-02 | 2024-12-02 | complete |
| State Criminal **North Carolina State Court - FLORES, RUBEN** | | 2024-12-02 | 2024-12-02 | clear |
| County Criminal **Los Angeles, CA - FLORES, RUBEN** | | 2024-12-02 | 2024-12-05 | clear |
| County Criminal **Madera, CA - FLORES, RUBEN** | | 2024-12-02 | 2024-12-04 | consider |
| National Federal Criminal | | 2024-12-02 | 2024-12-03 | clear |

**ER-124**

## County Criminal                                                    **consider**

**Madera, CA - FLORES, RUBEN**

| | |
|---|---|
| **Case Number** | CCR076735 |
| **Court** | Superior |
| **Filed Date** | 01/22/2024 |
| **Offense Date** | 12/16/2023 |
| **Name** | FLORES, RUBEN |
| **DOB** | ███XXXX |
| **Comments** | Confirmed By: NAME/DOB |

| | |
|---|---|
| **Charge** | **DRIVING UNDER THE INFLUENCE (0.08 % OR MORE)** |
| **Charge Type** | MISDEMEANOR |
| **Disposition** | GUILTY |
| **Disposition Date** | 09/18/2024 |
| **Sentence** | PROBATION: 3 YEARS |
| | JAIL: 5 DAYS |
| | FINE: 1869 |

*Para informacion en espanol, visite https://www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore) o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

# A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore) or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.
- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore) for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.
- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore) for an explanation of dispute procedures.
- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.
- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.
- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.
- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore).
- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.
- The following FCRA right applies with respect to nationwide consumer reporting agencies:

**ER-126**

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.
- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore (https://www.consumerfinance.gov/learnmore).

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br><br>b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue NW<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act.<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | a. Office of the Comptroller of the Currency Customer Assistance Group<br>P.O. Box 53570<br>Houston, TX 77052<br><br>b. Federal Reserve Consumer Help Center<br>P.O. Box. 1200<br>Minneapolis, MN 55480<br><br><br><br>c. Division of Depositor and Consumer Protection National Center for Consumer and Depositor Assistance Federal Deposit Insurance Corporation<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |

| | |
|---|---|
| d. Federal Credit Unions | d. National Credit Union Administration Office of Consumer Financial Protection<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air Carriers | Assistant General Counsel for Office of Aviation Consumer Protection<br>Department of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Public Assistance, Governmental Affairs, and Compliance<br>Surface Transportation Board<br>395 E Street SW<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Division Regional Office |
| 6. Small Business Investment Companies | Associate Administrator, Office of Capital Access<br>United States Small Business Administration<br>409 Third Street SW, Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Institutions that are members of the Farm Credit System | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue NW<br>Washington, DC 20580<br>(877) 382-4357 |

**ER-128**

# STATE OF CALIFORNIA

## A Summary of Your Rights Under California Law

Under California law, you are entitled, upon presentation of proper identification(*) , to find out from an investigative consumer reporting agency ("CRA") what is in your file, as follows:

1. In person, by visual inspection of your file during normal business hours and on reasonable notice. You may be accompanied by one other person of your choosing, who must furnish reasonable identification. The CRA may require you to furnish a written statement granting permission to the CRA to discuss your file in such person's presence.
2. By obtaining a summary of it via telephone call, if you have made a written request, with proper identification, for telephone disclosure and the toll charge, if any, for the telephone call is prepaid by you or charged directly to you; or
3. By requesting in writing, with proper identification, that a copy of it be sent to a specified addressee by certified mail. The CRA complying with such requests for certified mailings shall not be liable for disclosures to third parties caused by mishandling of mail after such mailings leave the investigative CRAs.

The CRA may not charge you more than the actual copying costs for providing you with a copy of your file. The CRA will provide trained personnel to explain any information furnished to you. The CRA will provide a written explanation of any coded information contained in files maintained on you. If you choose to visually inspect the file under option 1 above this written explanation will be provided whenever the file is provided to you.

---

(*) The term "proper identification" as used above shall mean that information generally deemed sufficient to identify a person. Such information includes documents such as a valid driver's license, social security account number, military identification card, and credit cards. Only if the consumer is unable to reasonably identify himself with the information described herein, may an investigative CRA require additional information concerning your employment and personal or family history in order to verify your identity.

# ESTADO DE CALIFORNIA

## Una muestra de sus derechos bajo las leyes del Estado de California

Bajo las leyes del Estado de California, usted tiene derecho, presentando previamente la identificación correcta (*), a que un investigador de la Agencia de Reporte del Consumidor (¨CRA¨) le suministre la información que está en su archivo y esto se hace de la siguiente manera:

1. La inspección visual de su archivo se hace en persona, durante horas hábiles y se debe solicitar, presentando en un período razonable, una notificación previa a su visita. Usted puede venir acompañado de la persona que usted desee, la cual debe presentar identificación personal válida. El CRA puede pedirle por escrito permiso para que el CRA pueda discutir su archivo en presencia de dicho acompañante.
2. Si desea obtener la información del sumario vía telefónica y usted la ha requerido por escrito y acompañada de la identificación correcta, el costo de la llamada estará bajo su responsabilidad, ya sea que esta sea prepagada o que se le cargue a usted directamente.
3. Si usted pide por escrito que le envíen una copia por correo, a la dirección que usted indique, usted debe presentar previamente la identificación correcta y esta le será enviada por correo certificado. Si el CRA accede a dicho requerimiento de envío por correo certificado, el CRA no se hace responsable por la revelación de la información a terceras personas, causado por el mal manejo del correo después de que este haya salido de las instalaciones del CRA.

El CRA no le cobrará mas de lo que actualmente se cobra por dar una copia de su archivo personal. El CRA cuenta con personal entrenado para explicar cualquier información que se suministre. El CRA explicará por escrito cualquier información codificada contenida en sus archivos personales.

Si usted elige la inspección visual del archivo bajo la opción 1 arriba mencionada, esta explicación por escrito se proveerá cuando el archivo le sea entregado.

---

(*) El término de IDENTIFICACIÓN CORRECTA, significa generalmente que la identificación suministrada se considera suficiente y veraz para reconocer a una persona. Tal información incluye documentos tales como la Licencia de Conducir, Número del Seguro Social, Tarjeta Militar y Tarjetas de Crédito. Solamente, si el consumidor no se puede identificar correctamente con alguna de las

**ER-129**

opciones anteriores, entonces el investigador del CRA pedirá información adicional relacionada con su empleo o su historia personal o familiar para verificar su identidad.

Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Ruben Flores*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| RUBEN FLORES,<br><br>Plaintiff,<br><br>vs.<br><br>ASSUREHIRE, INC.,<br><br>Defendant. | Case No.: 2:25-cv-01621<br><br>**COMPLAINT AND JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Ruben Flores ("Plaintiff") by and through his counsel brings the following Complaint against AssureHire, Inc. ("Defendant" or "AssureHire") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785, *et. seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, falsely branding Plaintiff as a convicted

1
COMPLAINT

misdemeanant with a history of reckless intoxication and endangering the public through drunk driving.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and Cal. Civ. Code § 1785, *et seq.*

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff had been convicted of a misdemeanor for driving under the influence (DUI). This egregiously false and reckless misrepresentation is entirely baseless and defamatory.

4.     Plaintiff has never, at any point in his life, been charged with a misdemeanor for driving under the influence (DUI) or any offense related to intoxicated driving.

5.     Plaintiff's prospective employer rejected his job application after receiving an employment background check report from Defendant, which falsely attributed a misdemeanor conviction to Plaintiff. This stigmatizing and defamatory misrepresentation—entirely unconnected to Plaintiff—directly cost him the

2
COMPLAINT

employment opportunity.

6.     Defendant's reckless misreporting could have been easily prevented had it exercised even minimal due diligence by reviewing the readily available public court records from Madera County, California. A simple review would have confirmed that the misdemeanor DUI conviction did not belong to Plaintiff, yet Defendant failed to take this basic step before disseminating the false and damaging report to Plaintiff's prospective employer.

7.     Had Defendant conducted even a cursory review of the public court records, it would have immediately discovered that the criminal records belonged to an entirely different individual—one who is clearly and unmistakably distinguishable from Plaintiff by mug shot, address history, and Social Security number.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.     As a result of Defendant's violations of the FCRA and CCRAA,

3
COMPLAINT

Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and Cal. Civ. Code § 1785.14. Plaintiff further brings this action against Defendant for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

## **PARTIES**

13. Ruben Flores ("Plaintiff") is a natural person residing in Norwalk, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and

Cal Civ. Code § 1785.3(b).

14. Defendant AssureHire, Inc. ("Defendant" or "AssureHire") is a corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 2206 Plaza Dr. Ste. 100, Rocklin, CA 95765. Defendant's registered agent's address is located at 330 N. Brand Blvd. Glendale, CA 91203.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) and Cal Civ. Code § 1785.3(d) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

5
COMPLAINT

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just

6
COMPLAINT

credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been

7
COMPLAINT

a boom in the background check industry.

30.  As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.  The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32.  Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33.  Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.  Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").

8
COMPLAINT

35.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.     A proper quality control review of Plaintiff's report would have unmistakably revealed that Defendant was falsely attributing a misdemeanor DUI conviction to Plaintiff, when in fact, it belonged to an entirely unrelated individual. This glaring error would have been immediately apparent through a simple comparison of the mug shot in the public record, as well as clear discrepancies in address history and Social Security number.

39.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

9
COMPLAINT

## FACTS
### Plaintiff Applies for a Job with Patriot Environmental Services

40.     In or around November 2024, Plaintiff applied for full-time employment as a Field Technician with Patriot Environmental Services.

41.     Upon information and belief, Plaintiff successfully overcame all requisite hurdles to securing the applied-for position, except one: the passing of a background check report.

42.     On or about November 25, 2024, Plaintiff received a job offer from Patriot Environmental Services indicating that the start date will be on December 11, 2024.

43.     However, the offer of employment extended to Plaintiff was contingent upon Plaintiff's passing of a background check ("consumer report").

### Defendant Published an Inaccurate Background Check Report to Patriot Environmental Services

44.     Patriot Environmental Services contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

45.     On or about December 2, 2024, Patriot Environmental Services ordered a criminal background check on Plaintiff from Defendant.

46.     On or about December 5, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Patriot Environmental Services.

10
COMPLAINT

47.     Within that consumer report, Defendant published inaccurate information about Plaintiff.

48.     Specifically, Defendant's consumer report on Plaintiff brazenly and recklessly smeared his record with a misdemeanor DUI conviction from Madera County, California—an utterly false and baseless conviction that had no connection to him, which appeared in the consumer report as follows:

**County Criminal**                                              consider
**Madera, CA - FLORES, RUBEN**

Case Number  CCR076735
Court  Superior
Filed Date  01/22/2024
Offense Date  12/16/2023
Name  FLORES, RUBEN
DOB  01/08/XXXX
Comments  Confirmed By: NAME/DOB

Charge  **DRIVING UNDER THE INFLUENCE (0.08 % OR MORE)**
Charge Type  MISDEMEANOR
Disposition  GUILTY
Disposition Date  09/18/2024
Sentence  PROBATION: 3 YEARS
JAIL: 5 DAYS
FINE: 1869

49.     The criminal conviction reported by Defendant about Plaintiff to Patriot Environmental Services ***does not*** belong to Plaintiff.

50.     Plaintiff has never, at any point in his life, been charged with or convicted of a misdemeanor for driving under the influence (DUI).

51.     A cursory review of the widely available public court records confirms that the criminal record belongs to a distinct and unrelated male, Ruben Flores ("Convicted Misdemeanant Flores").

52.     Had Defendant actually consulted or obtained the widely available

11
COMPLAINT

public court records regarding the conviction, it would have seen obvious discrepancies between Convicted Misdemeanant Flores and Plaintiff.

53. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Misdemeanant Flores include the following:

(a) A mug shot relating to the misdemeanor DUI conviction readily demonstrates that Plaintiff is not the same individual as Convicted Misdemeanant Flores;

(b) Plaintiff's current residence is at Norwalk, California, which is confirmed and clearly indicated on the face of the subject consumer report, and has also formerly lived in Lynwood, California, Los Angeles, California, and Mount Holly, North Carolina, yet the public court records regarding the criminal conviction indicate that Convicted Misdemeanant Flores resided in Madera, California at the time he committed the offense;

(c) Plaintiff's Social Security number, which was provided to Defendant and is partially contained on the face of the subject consumer report is entirely different than that of Convicted Misdemeanant Flores.

54. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the

12
COMPLAINT

consumer report it sold about Plaintiff to Plaintiff's prospective employer.

55.     Had Defendant adhered to reasonable procedures, it would have easily uncovered that the inaccurate and stigmatizing criminal convictions belonged to a completely unrelated individual—one who is unmistakably distinguishable from Plaintiff by physical appearance, as evident from a publicly available mug shot, as well as clear discrepancies in address history and Social Security number.

56.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1785.14.

57.     Further, Plaintiff was not informed by Defendant that it had provided the public record information likely to have an adverse impact on employment to Plaintiff's employer at the time the information was provided.

58.     Accordingly, Plaintiff was not afforded an opportunity to dispute and correct the inaccurate report *before* Defendant published the inaccurate report containing the adverse information to Plaintiff's employer and before Plaintiff's employer made an adverse decision to terminate Plaintiff's employment.

59.     The FCRA has an employment-specific provision designed to address the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse affect on employment, which is to

13
COMPLAINT

either provide an immediate notice to the applicant at the time it published public records to the user of the report or it must maintain strict procedures to ensure the public record information is accurate, complete, and up to date.

60.　Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with both, subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; and subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was accurate, complete, and up to date.

**Patriot Environmental Services Rescinds Plaintiff's Job Application**

61.　On or about December 13, 2024, Plaintiff was notified by Patriot Environmental Services that his offer of employment had been rescinded as a direct result of the misdemeanor conviction reported by Defendant.

62.　Shortly thereafter, on or about December 18, 2024, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the criminal conviction of another, namely Convicted Misdemeanant Flores, was published in the consumer report Defendant sold about Plaintiff to Patriot Environmental Services.

63.　Plaintiff was very panicked, confused, and concerned about the negative impact of Convicted Misdemeanant Flores's serious criminal conviction reported on the subject consumer report – specifically, the impact of the same on his future.

14<br>COMPLAINT

64. Specifically, Defendant matched Plaintiff and Convicted Misdemeanant Flores and published the criminal record of Convicted Misdemeanant Flores onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Patriot Environmental Services but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

65. On or about January 26, 2025, desperate to secure employment with Patriot Environmental Services and riddled with worry over the far-reaching impacts of being confused with a convicted misdemeanant, Plaintiff disputed the inaccurate information with Defendant, via email.

66. Plaintiff identified himself and provided sufficient information to Defendant to support his dispute.

67. Plaintiff specifically disputed the criminal record of Convicted Misdemeanant Flores.

68. Plaintiff specifically stated that the criminal record of Convicted do not belong to Plaintiff.

69. To support his dispute, Plaintiff attached a copy of the mugshot photo of Convicted Misdemeanant Flores, obtained from the Madera County Court, as well as a copy of his driver's license for comparison, demonstrating beyond doubt that the individual in the report was not the Plaintiff.

15
COMPLAINT

70.     Plaintiff specifically asked Defendant to correct his consumer report and provide the corrected version to both Patriot Environmental Services and himself.

71.     On January 27, 2024, Plaintiff received Defendant's response, which stated that the documentation had been forwarded to their Dispute Department.

72.     On January 28, 2025, the Defendant provided Plaintiff with an updated report, which no longer included the misdemeanor conviction, thereby demonstrating the initial reckless inaccuracy disseminated about Plaintiff.

73.     Plaintiff forwarded a copy of the updated background report to Patriot Environmental Services. Subsequently, the Plaintiff received a call from Patriot Environmental Services, during which he was informed that they would need to wait for a representative from Human Resources to return from vacation before issuing a new offer letter.

74.     On or about February 14, 2025, Plaintiff received a second job offer from Patriot Environmental Services. This offer, with a proposed start date of March 3, 2025, was contingent upon the successful completion of the same pre-employment requirements as the first job offer.

75.     Defendant's false report caused damage to the Plaintiff by leaving him unemployed for several additional months that he otherwise would have been employed for had Defendant instituted and implemented reasonable procedures to ensure the maximum possible accuracy of the consumer reports they disseminate.

76.     Specifically, had the Defendant not reported the inaccurate criminal

16
COMPLAINT

record, Plaintiff would have successfully fulfilled the pre-employment requirements in December 2024, when he initially applied and received a job offer from Patriot Environmental Service and began to work shortly thereafter.

77. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff continues to remain unemployed as his new start date was set to March 3, 2024, pursuant to his employment offer received on February 14, 2025.

78. The erroneous report severely disrupted Plaintiff's life, delaying his employment and inflicting significant financial hardship that compromised his ability to support his family. Worse still, the report shattered his personal relationships—his fiancée, genuinely believing that Plaintiff was the convicted misdemeanant Flores, ended their engagement in devastation and disgrace. As a result, Plaintiff was deprived of the ability to celebrate both his and his son's birthdays, deepening his emotional suffering. Struggling to meet even basic expenses, he was forced into the humiliating position of borrowing more money from his parents, an indignity that only compounded his distress.

79. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

80. As a result of Defendant's violations of the FCRA, Plaintiff has suffered

a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

81.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

82.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

83.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

84.     At all times pertinent hereto, the above-mentioned consumer report was

18
COMPLAINT

**ER-148**

a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

85.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

86.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

87.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover

19
COMPLAINT

under 15 U.S.C. § 1681o.

88.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## Cal. Civ. Code § 1785.14
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

89.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

90.     Defendant is a "consumer reporting agenc[ies]" as defined by Cal. Civ. Code § 1785.3(d).

91.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

92.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report[s]" as that term is defined by Cal. Civ. Code § 1785.3(c).

93.     Defendant violated Cal. Civ. Code § 1785.14 by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within it.

94.     As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment

20
COMPLAINT

opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

95.   Defendant willfully violated Cal. Civ. Code § 1785.14 in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2). Alternatively, Defendant was negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(1).

96.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d), § 1785.31(a)(1) and/or § 1785.31(a)(2).

21<br>COMPLAINT

Case: 25-6594, 05/04/2026, DktEntry: 25.1, Page 152 of 162

**COUNT IV**
**15 U.S.C. § 1681k(a)(1)**
**Failure to Provide "At the time" Notice and Failure to Maintain and Follow
Strict Procedures to Ensure that Adverse Public Record Information is
Accurate, Complete, and Up-to-date**

97. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

98. The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

99. Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current

22
COMPLAINT

public record status of the item at the time of the report is reported.

100. Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Patriot Environmental Services at the time it provided his consumer report to Patriot Environmental Services, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

101. Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

102. Plaintiff did not learn of the adverse information in Defendant's consumer report until Patriot Environmental Services informed him of the adverse action that was taken against him because of the stigmatizing and erroneous reporting.

103. Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

104. Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

105. Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it

23
COMPLAINT

furnishes and resells these records in one of its reports.

106. Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

107. As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; permanent family upheaval; loss of capacity for enjoyment of life; and severe emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and deep embarrassment because of stigma from his family and friends. This emotional distress further resulted in the manifestation of physical symptoms, such as weakness, blood pressure spikes, migraines, nausea, loss of appetite, and debilitating depression.

108. Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

109. Plaintiff is entitled to recover statutory damages, punitive damages, and

24
COMPLAINT

reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the FCRA;

ii.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 26, 2025

By: */s/ Andrew J. Gramajo*
Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

25
COMPLAINT

Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
*Pro Hac Vice Application Forthcoming*
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff*
*Ruben Flores*

26
COMPLAINT

Name  Joshua E. Kim

Address  2304 Huntington Dr., Suite 210

City, State, Zip  San Marino, CA 91108

Phone  888-651-6411

Fax  818-484-2023

E-Mail  joshua@devinfoklaw.com

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ruben Flores | CASE NUMBER: |
| PLAINTIFF(S), | 2:25-cv-01621-WLH-SK |
| v. | |
| AssureHire, Inc. | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ Ruben Flores _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   granting defendant's motion to dismiss

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ____ June 2, 2025 ____ . Entered on the docket in this action on June 2, 2025 ____ .

A copy of said judgment or order is attached hereto.

October 16, 2025

Date

Signature
☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)

**NOTICE OF APPEAL**

ER-157

ACCO,NORTHERN,(SKx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:25-cv-01621-WLH-SK

Ruben Flores v. AssureHire, Inc.
Assigned to: Judge Wesley L. Hsu
Referred to: Magistrate Judge Steve Kim
Case in other court:  9th CCA, 25-04110
                       9TH CCA, 25-06594
Cause: 15:1681 Fair Credit Reporting Act

Date Filed: 02/26/2025
Date Terminated: 10/10/2025
Jury Demand: Plaintiff
Nature of Suit: 480 Consumer Credit
Jurisdiction: Federal Question

**Plaintiff**

**Ruben Flores**                                             represented by

**Andrew Joseph Gramajo**
AJG Law Group, PC
25 A Crescent Drive, No. 402
Pleasant Hill, CA 94523
415-638-9140
Email: andrew@ajglawgroup.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin H Fok**
DHF Law PC
2304 Huntington Drive Suite 210
San Marino, CA 91108
888-651-6411
Fax: 818-484-2023
Email: devin@devinfoklaw.com
*ATTORNEY TO BE NOTICED*

**Joshua Eunsuk Kim**
DHF Law, PC
2304 Huntington Drive, Suite 210
San Marino, CA 91108
888-651-6411
Fax: 818-484-2023
Email: joshua@devinfoklaw.com
*ATTORNEY TO BE NOTICED*

**Meir C. D Rubinov**
Consumer Attorneys PLLC
New York
68-29 Main Street
Flushing, NY 11367
718-640-8123
Fax: 718-247-8020
Email: mrubinov@consumerattorneys.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AssureHire, Inc.**                    represented by   **Elizabeth A. Sperling**
Glaser Weil Fink Howard Jordan and
Shapiro LLP
600 West Broadway, Suite 2850
San Diego, CA 92101
310-765-4380
Fax: 619-732-3496
Email: esperling@glaserweil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Miller**
Glaser Weil Fink Howard Jordan and
Shapiro LLP
600 West Broadway Suite 2150
San Diego, CA 92101
619-765-4380
Fax: 619-483-0646
Email: amiller@glaserweil.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/26/2025 | 1 | COMPLAINT Receipt No: ACACDC-39178128 - Fee: $405, filed by Plaintiff Ruben Flores. (Attorney Andrew Joseph Gramajo added to party Ruben Flores(pty:pla))(Gramajo, Andrew) (Entered: 02/26/2025) |
| 02/26/2025 | 2 | CIVIL COVER SHEET filed by Plaintiff Ruben Flores. (Gramajo, Andrew) (Entered: 02/26/2025) |
| 02/26/2025 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 , Civil Cover Sheet (CV-71) 2 filed by Plaintiff Ruben Flores. (Gramajo, Andrew) (Entered: 02/26/2025) |
| 02/26/2025 | 4 | CERTIFICATE of Interested Parties filed by Plaintiff Ruben Flores, identifying Ruben Flores, Andrew J. Gramajo, AssureHire, Inc.. (Gramajo, Andrew) (Entered: 02/26/2025) |
| 02/26/2025 | 5 | NOTICE OF ASSIGNMENT to District Judge Wesley L. Hsu and Magistrate Judge Steve Kim. (et) (Entered: 02/26/2025) |
| 02/26/2025 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 02/26/2025) |
| 02/26/2025 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (et) (Entered: 02/26/2025) |
| 02/26/2025 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening ) 1 as to Defendant AssureHire, Inc. (et) (Entered: 02/26/2025) |
| 03/04/2025 | 9 | STANDING ORDER REGARDING NEWLY ASSIGNED CIVIL CASES by Judge Wesley L. Hsu. (hc) (Entered: 03/04/2025) |

| 03/05/2025 | 10 | PROOF OF SERVICE Executed by Plaintiff Ruben Flores, upon Defendant AssureHire, Inc. served on 3/3/2025, answer due 3/24/2025. Service of the Summons and Complaint were executed upon Jessie Gastelum in compliance with Federal Rules of Civil Procedure by personal service (Gramajo, Andrew) (Entered: 03/05/2025) |
|---|---|---|
| 03/24/2025 | 11 | Notice of Appearance or Withdrawal of Counsel: for attorney Elizabeth A. Sperling counsel for Defendant AssureHire, Inc.. Adding Elizabeth A. Sperling as counsel of record for AssureHire, Inc. for the reason indicated in the G-123 Notice. Filed by Defendant AssureHire, Inc.. (Attorney Elizabeth A. Sperling added to party AssureHire, Inc.(pty:dft)) (Sperling, Elizabeth) (Entered: 03/24/2025) |
| 03/24/2025 | 12 | Joint STIPULATION Extending Time to Answer the complaint as to AssureHire, Inc. answer now due 4/14/2025, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant AssureHire, Inc..(Sperling, Elizabeth) (Entered: 03/24/2025) |
| 03/24/2025 | 13 | CERTIFICATE of Interested Parties filed by Defendant AssureHire, Inc., identifying Mitratech Holdings, Inc. (Sperling, Elizabeth) (Entered: 03/24/2025) |
| 03/24/2025 | 14 | Notice of Appearance or Withdrawal of Counsel: for attorney Alexander Miller counsel for Defendant AssureHire, Inc.. Adding Alexander R. Miller as counsel of record for AssureHire, Inc. for the reason indicated in the G-123 Notice. Filed by Defendant AssureHire, Inc. (Attorney Alexander Miller added to party AssureHire, Inc.(pty:dft)) (Miller, Alexander) (Entered: 03/24/2025) |
| 04/14/2025 | 15 | NOTICE OF MOTION AND MOTION to Dismiss Case *Pursuant to Fed. R. Civ. P. 12(b) (6)* filed by Defendant AssureHire, Inc.. Motion set for hearing on 5/30/2025 at 01:30 PM before Judge Wesley L. Hsu. (Attachments: # 1 Memorandum, # 2 Declaration of Alexander Miller, # 3 Exhibit 1 to Miller Declaration, # 4 Request for Judicial Notice, # 5 Exhibit A to Request for Judicial Notice, # 6 Proposed Order) (Sperling, Elizabeth) (Entered: 04/14/2025) |
| 04/18/2025 | 16 | APPLICATION of Non-Resident Attorney Meir C. D. Rubinov to Appear Pro Hac Vice on behalf of Plaintiff Ruben Flores (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-39532274) filed by Plaintiff Ruben Flores. (Attachments: # 1 Proposed Order) (Gramajo, Andrew) (Entered: 04/18/2025) |
| 04/18/2025 | 17 | ORDER by Judge Wesley L. Hsu: granting 16 Non-Resident Attorney Meir C. D. Rubinov APPLICATION to Appear Pro Hac Vice on behalf of Plaintiff Ruben Flores, designating Gramajo, Andrew as local counsel. THERE IS NO PDF ASSOCIATED WITH THIS ENTRY (aus) (Entered: 04/18/2025) |
| 04/22/2025 | 18 | NOTICE OF ERRATA filed by Plaintiff Ruben Flores. correcting APPLICATION of Non-Resident Attorney Meir C. D. Rubinov to Appear Pro Hac Vice on behalf of Plaintiff Ruben Flores (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-39532274) 16 (Rubinov, Meir) (Entered: 04/22/2025) |
| 05/08/2025 | 19 | STIPULATION to Continue Hearing of Defendant AssureHire, Inc.s Motion to Dismiss from 05/30/2025 to 06/06/2025 filed by Plaintiff Ruben Flores. (Attachments: # 1 Proposed Order, # 2 Declaration)(Rubinov, Meir) (Entered: 05/08/2025) |
| 05/13/2025 | 20 | ORDER RE STIPULATION TO CONTINUE HEARING OF DEFENDANT ASSUREHIRE, INC.'S MOTION TO DISMISS 19 by Judge Wesley L. Hsu. The in-person Hearing set for May 30, 2025, at 01:30 p.m. is HEREBY CONTINUED to June 6, 2025 at 1:30 p.m. (lom) (Entered: 05/13/2025) |
| 05/16/2025 | 21 | OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *Pursuant to Fed. R. Civ. P. 12(b)(6)* 15 filed by Plaintiff Ruben Flores. (Attachments: # 1 Declaration |

| | | |
|---|---|---|
| | | of Meir Rubinov, # 2 Exhibit 1 - Proposed Amended Complaint, # 3 Exhibit 2 - Proposed Amended Complaint - Redline, # 4 Proposed Order)(Rubinov, Meir) (Entered: 05/16/2025) |
| 05/23/2025 | 22 | REPLY In Support Of NOTICE OF MOTION AND MOTION to Dismiss Case *Pursuant to Fed. R. Civ. P. 12(b)(6)* 15 filed by Defendant AssureHire, Inc.. (Sperling, Elizabeth) (Entered: 05/23/2025) |
| 06/02/2025 | 23 | ORDER RE DEFENDANT'S MOTION TO DISMISS 15 by Judge Wesley L. Hsu. For the foregoing reasons, the Motion is GRANTED, such that the action is dismissed in its entirety. The first and second causes of action - for violations of Section 1681e(b) of the FCRA and Section 1785.14 of the CCRAA, respectively - are dismissed with prejudice. The third cause of action - for violation of Section 1681k(a) of the FCRA is dismissed without prejudice. Should Plaintiff choose to file an amended complaint, the Court ORDERS him to do so within twenty-one (21) days of this Order. (lom) (Entered: 06/02/2025) |
| 07/01/2025 | 24 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Ruben Flores. Appeal of Order on Motion to Dismiss Case,, 23 . (Appeal Fee - $605 Fee Paid, Receipt No. ACACDC-40008790.) (Attachments: # 1 Appendix)(Rubinov, Meir) (Entered: 07/01/2025) |
| 07/02/2025 | 25 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 25-4110 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 24 as to Plaintiff Ruben Flores. (sh) (Entered: 07/09/2025) |
| 08/27/2025 | 26 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 24 filed by Ruben Flores. CCA # 25-4110. The court has received the response to the July 3, 2025 order. The court lacks jurisdiction over this appeal, because the challenged order is not final or appealable. DISMISSED.(mat) (Entered: 08/29/2025) |
| 09/16/2025 | 27 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant AssureHire, Inc.. Motion set for hearing on 10/17/2025 at 01:30 PM before Judge Wesley L. Hsu. (Attachments: # 1 Memorandum, # 2 Proposed Order) (Sperling, Elizabeth) (Entered: 09/16/2025) |
| 09/18/2025 | 28 | MANDATE of Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 24 , CCA # 25-4110. The judgment of this Court, entered August 27, 2025, takes effect this date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. [See USCA Order, 26 DISMISSED.](mat) (Entered: 09/21/2025) |
| 09/30/2025 | 29 | NOTICE OF NON-OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case 27 filed by Defendant AssureHire, Inc.. (Miller, Alexander) (Entered: 09/30/2025) |
| 10/10/2025 | 30 | MINUTES (IN CHAMBERS) ORDER RE DEFENDANTS MOTION TO DISMISS 27 by Judge Wesley L. Hsu. For the reasons stated herein, the Court GRANTS Defendant's Motion and ORDERS this action dismissed with prejudice. ( MD JS-6. Case Terminated ) (lom) (Entered: 10/10/2025) |
| 10/16/2025 | 31 | NOTICE of Association of Counsel associating attorney Joshua E. Kim on behalf of Plaintiff Ruben Flores. Filed by Plaintiff Ruben Flores (Attorney Joshua Eunsuk Kim added to party Ruben Flores(pty:pla))(Kim, Joshua) (Entered: 10/16/2025) |
| 10/16/2025 | 32 | NOTICE of Association of Counsel associating attorney Devin H. Fok on behalf of Plaintiff Ruben Flores. Filed by Plaintiff Ruben Flores (Attorney Devin H Fok added to party Ruben Flores(pty:pla))(Fok, Devin) (Entered: 10/16/2025) |
| 10/17/2025 | 33 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by plaintiff Ruben Flores. Appeal of Order on Motion to Dismiss Case,, 23 , Order on Motion to Dismiss Case, 30 . |

| | | |
|---|---|---|
| | | (Appeal Fee - $605 Fee Paid, Receipt No. ACACDC-40728583.) (Attachments: # 1 Appendix Lisst of All Parties and Counsel, # 2 Exhibit Appealed Order)(Kim, Joshua) (Entered: 10/17/2025) |
| 10/20/2025 | 34 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 25-6594 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 33 as to Plaintiff Ruben Flores. (sh) (Entered: 10/24/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/03/2026 22:48:33 | | | |
| **PACER Login:** | thejk1945 | **Client Code:** | FLORES |
| **Description:** | Docket Report | **Search Criteria:** | 2:25-cv-01621-WLH-SK End date: 5/4/2026 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**ER-162**